704 So.2d 415 (1997)
L & M PRODUCTS, INC., et al., Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 29998-CA.
Court of Appeal of Louisiana. Second Circuit.
December 10, 1997.
Rehearing Denied January 15, 1998.
*416 Larry E. Clark, in proper person.
Hilry Huckaby, III, Shreveport, for Plaintiffs-Appellants.
Richard Ieyoub, Attorney General, Bertrand and Soileau by Charles R. Soileau, for Defendant-Appellee.
Before WILLIAMS and PEATROSS, JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
After years of unfruitful legal proceedings in this expropriation matter, the lower court dismissed with prejudice all claims remaining for plaintiff and intervenor. Finding no abuse in the trial judge's discretion, we affirm.

Procedural History[1]
In 1986, the State of Louisiana, through the Department of Transportation and Development, began expropriation proceedings against Larry Clark and his wife as the owners of three lots of land in Shreveport needed for Interstate-49 construction. The property, at that time, was occupied by a lessee, L & M Hair Care Products, Inc. ("L & M")a business also owned by defendants. Before the initial trial, the state and the Clarks entered into a stipulation regarding the value of the property taken and the severance damages owed. The court resolved the remaining issue, whether the owners were entitled to an award for the cost of a replacement facility, in favor of the Clarks. This court, however, reversed on that matter, concluding that such compensation did not belong to the Clarks, but to L & M, a non-party. See State, DOTD v. Clark, 548 So.2d *417 365 (La.App. 2d Cir.1989), writ denied, 552 So.2d 395 (La.1989).
Thereafter, in July 1990, L & M filed the instant suit to recover the cost of moving its business to an equally suited location and building. Initially, this corporate plaintiff moved for summary judgment against the state (now appearing as defendant) contending that the lower court had previously resolved the issues of entitlement to and the cost of a replacement facility in the earlier Clark expropriation proceeding. The trial judge agreed and granted judgment accordingly. The state appealed, but at oral argument before this court, both parties affirmatively maintained a desire to have the district court judgment reversed and the case remanded for further proceedings. We complied. See unpublished opinion, L & M Hair Care Products v. State, DOTD, No. 23,124-CA, 590 So.2d 122 (La.App. 2d Cir. 12/04/91).
Again attempting to conclude the matter, the parties proceeded to trial in December 1992. When the court discovered that certain witnesses for plaintiff (L & M) had made contact with jury members, the judge declared a mistrial. Then, in response to subsequent state motions, the district court denied a peremptory exception of prescription and concluded that L & M should bear the burden of proof at trial. We affirmed those rulings. L & M Hair Care Products v. State, DOTD, 622 So.2d 1194 (La.App. 2d Cir.1993).
Trial still did not occur in 1994. Plaintiff sought a Rule to Show Cause why the state should not be required to deposit funds into the registry of the court equal to the amount allegedly fixed by the state's expert as the cost of replacing the business facility. Although argued in April 1994 and submitted on briefs, the record contains neither an indication that the court ruled on this request nor a notation that L & M pursued such a ruling after this hearing. Meanwhile, the state filed an exception of res judicata and successfully excluded any claims by plaintiff exceeding the issue of the replacement facility.[2]
Near the end of the year, plaintiff moved for an expedited and preferential trial setting so as to place its case at the top of the list for the then-scheduled date of March 6, 1995.[3] At approximately the same time, L & M retained an additional licensed attorney, and Clark, acting as representative of the corporation, began filing pro se pleadings. In April 1996, Clark filed his own petition for intervention, attaching an assignment of rights wherein he, as company president, assigned ten percent of L & M's rights to himself in proper person. Soon thereafter, L & M retained a third and final attorney.[4] By May 1996, Clark had assigned all of the corporation's rights to himself and was proceeding with the intervention.
Clark's pleadings generally centered upon the theme previously established by L & M's 1994 Rule to Show Causei.e., that the state should be required to deposit funds into the registry of the court equal to the amount allegedly fixed by the state's expert as the cost of replacing the business facility. In one document, Clark stated his intent not to go forward with a trial until his company had been afforded its constitutional and statutory rights.[5] Nevertheless, plaintiff filed the most *418 recent of these pleadings, requesting another Rule to Show Cause, in December 1996. The court responded in January 1997 with an order compelling the state to place the disputed funds into the registry of the court or show cause why it should not be required to do so on February 3, 1997.
As per a June 1996 scheduling order, the matter was called for trial on February 3, 1997. The court initially noted that it would defer ruling on the then-pending Rule to Show Cause to the merits of the case and proceed with the trial. Clark, however, in his role as intervenor, had not filed a pretrial order delineating his claims and listing his exhibits and witnesses, and, the judge refused to go forward with this jury trial without one. The court noted that it would either "require that you [Clark] prepare a pretrial or [it would] dismiss this case." Despite this plaintiff's protestation that he had not received a copy of the scheduling order which contained the directive to file a pretrial order, he confessed an awareness that trial had been scheduled for this date. Indeed, the mentioned scheduling order contains a specific notation that a certified copy of it should be mailed directly to Clark. Noting its refusal to turn the rules of court upside down for any litigant, the judge again stated that if he did not receive a pretrial order he would dismiss Clark's intervention. Clark responded that the court could so proceed if that was its desire, but that he would not file a pretrial order. A third time, the court asked if this plaintiff intended to file a pretrial order. Upon receiving yet another negative response, the judge dismissed Clark's intervention.
The court then turned to defendant's Motion to Compel, which concerned L & M's failure to answer the state's interrogatories regarding the identity of that plaintiff's witnesses and exhibits. Presumably, the corporation had also failed to file a pretrial order. Its counsel explained that Clark, as president of the company, was in control of the case. The attorney reportedly could do only what Clark asked him to do, and no more. During these discussions, the judge thrice informed this plaintiff that its case would be dismissed with prejudice if the court did not receive a pretrial order by the end of that day.
The following morning, no pretrial orders had been filed and neither Clark nor L & M's attorney appeared in court. The state informed the judge that it had attempted to contact corporate counsel twice, but to no avail. L & M's attorney had related to defendant that Clark had instructed him not to participate in the pretrial order. Nor did plaintiff offer to use an older version of the pretrial order. As promised, the district court dismissed all claims of plaintiff and intervenor with prejudice. This appeal ensued.

Discussion
Although plaintiffs assigned multiple errors on appeal, the threshold issue to be decided is whether the trial court erred in dismissing appellants' (L & M's and Clark's) claims. Upon finding no error in that regard, the merit issues raised by appellants are rendered moot.
In addition to the trial court's June 1996 written scheduling order requiring that a pretrial order be filed thirty days before trial, in the instant matter, we are also faced with the judge's direct, oral order to produce such a document on the date of trial. Like the court in Allwein v. Horn, 558 So.2d 810 (La.App. 5th Cir.1990),[6] we find the matter at hand to be akin to a party's refusal to comply with court-ordered discovery. Refusal to comply with such court orders is a serious matter. Trial judges must have severe sanctions available to deter litigants from flouting discovery orders. Horton v. McCary, 93-2315 (La. 04/11/94), 635 So.2d 199.
Of course, this court remains cognizant that dismissal with prejudice is a severe penalty that should be applied only in extreme *419 circumstances. Horton, supra; Allwein, supra; Smith v. Allied Chemical Corp., 517 So.2d 250 (La.App. 1st Cir.1987), writ denied, 518 So.2d 510 (La.1988). Because the sanction of dismissal involves property rights, it should be reserved for the most culpable conduct. Horton, supra. Likewise, the non-compliant party should be clearly aware that his action or inaction will result in dismissal of his case. Allwein, supra. Nonetheless, the trial judge has much discretion in selecting the appropriate sanctions for failure to comply with discovery orders, and a judgment granting a sanction will not be disturbed on appeal absent a clear showing of abuse of discretion. Allwein, supra; Smith, supra.
In evaluating a similar circumstance, our supreme court turned to the federal district courts for guidance. See Horton, supra. The Horton court set forth the following four factors for consideration before granting a default judgment against a defendant who had established a pattern of intentionally withholding and hiding discoverable information from the opposing party: a court should evaluate (1) whether the violation was willful or resulted from the inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party's trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney. Horton, supra. Indeed, even Louisiana jurisprudence maintains that dismissal is generally reserved for those cases in which the client, not merely the attorney, is at fault; and, the record must support a finding that the failure was due to wilfulness, bad faith, or fault by the plaintiff himself. See, e.g., Horton, supra; Smith, supra.
Applying these factors to the circumstances leading up to the dismissal of L & M's suit and Clark's intervention, we find no error in the trial court's decision. As previously explained, the judge informed each appellant on three separate occasions that their failure, and then refusal, to file a pretrial order would result in the dismissal of their suits with prejudice. Clark, acting then on his own behalf and as president of L & M, clearly stated his understanding of the court's position and retorted that he would not file the requested pleading nor would he allow corporate counsel to comply with the court order on behalf of L & M. The forcefulness with which Clark stated his position to the lower court leaves this panel convinced that even given additional time to comply no pretrial order would have been filed. Clearly, a less drastic sanction would have been ineffective. Although in a reply brief on appeal, Clark and L & M suggest that a previous pretrial order could have been utilized, that document (filed in 1994) had been made obsolete by several factors, including the granting of the state's exception of res judicata and Clark's intervention. Without either lists of witnesses and exhibits or a delineation of the issues to be presented in this potentially complicated case, it would be unfair to ask the state, or even the lower court, to proceed.
Under these circumstances, we find no error in the trial court's choice of sanction against this personally culpable plaintiff.
Finally, we address the motion belatedly raised by state's counsel during oral argument. Appellee argues that Clark's personal representation of L & M on appeal constitutes the unlawful practice of law under La. R.S. 37:213 and that the appeal should, thus, be dismissed.[7] Even should we consider such a sanction, our review of the merits renders an almost identical result. In either scenario, we would be affirming the dismissal of appellants' claims. We, therefore, pretermit further discussion of this issue.

Conclusion
Accordingly, the judgment below is affirmed at appellants' costs.
AFFIRMED.
WILLIAMS, J., concurs.

*420 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS and PEATROSS, JJ., and PRICE, J. Pro Tem.
Rehearing denied.
NOTES
[1] Although this appeal technically concerns only a single hearing in 1997 and the sanctions imposed upon L & M's and Clark's refusals to comply with a court order, a complete understanding and fair evaluation of this case necessitates a review of its protracted history.
[2] In 1996, Larry Clark, acting as representative for L & M, personally sought review of this ruling at the appellate level. Due to the lateness of the applications made and the fact that the ruling provided only a partial judgment which could be addressed on an appeal of the merits, we declined to exercise supervisory jurisdiction and refused to consider an appeal. See L & M Hair Care Products v. State, DOTD, No. 29,025-CW (La.App. 2d Cir. 06/06/96); L & M Hair Care Products v. State, DOTD, No. 29,122-CW (La. App. 2d Cir. 07/03/96); L & M Hair Care Products v. State, DOTD, No. 29,092-CA (La.App. 2d Cir. 07/03/96). Clark even attempted to dismiss his and L & M's cases without prejudice in order to make the judgment appealable. The state opposed the motion and the district court likewise denied the request.
[3] Instead of trial on this date, the court heard the state's above-mentioned exception of res judicata.
[4] The other involved attorneys withdrew their representation of L & M. One individual, Ransdell Keene, filed an intervention seeking to recover his fees. The court later dismissed his claim with prejudice and Keene did not appeal.
[5] On May 10, 1996, Clark filed a "Notice to the Defendant, Plaintiff Will Not Proceed to Trial until Plaintiff Has Received All of its Constitutional and Statutory Rights Given by Law."
[6] The fifth circuit in Allwein cited two first circuit cases where arguably contrary results had been reached: Dural v. City of Morgan City, 407 So.2d 757 (La.App. 1st Cir.1981); Boudreaux v. Yancey, 256 So.2d 340 (La.App. 1st Cir. 1971). Those cases, however, concerned the parties' refusals to attend or participate in pretrial conferencesa situation much different than the disobedience of a direct court order. We have previously noted this difference in Raburn v. Parker, 573 So.2d 624 (La.App. 2d Cir.1991), wherein this court chose to follow Boudreaux.
[7] The state could have raised this issue as soon as Clark had filed the appellate brief on both his own behalf and for L & M, thus, affording appellants an opportunity to rectify the situation.