743 So.2d 909 (1999)
Noel M. GILBERT & Cardio Devices, Inc., Plaintiffs-Appellants,
v.
John VISONE, Defendant-Appellee.
No. 32,303-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
Noel Gilbert, in pro. per.
Wiener, Weiss & Madison by Larry Feldman, Jr., Shreveport, Counsel for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
Plaintiff, Cardio Devices, Inc., and the defendant in reconvention, Noel Gilbert, appealed the judgment which (1) dismissed Cardio's action for breach of an employment contract against John P. Visone and *910 (2) rescinded the employment contract between Cardio and Visone, awarding damages and attorney's fees to Visone who answered the appeal and sought an increase in the attorney's fees. The judgment of the trial court is vacated and the matter is remanded with instructions for further proceedings.

FACTS
A previous appeal in this same litigation dealing with an exception of res judicata, Gilbert v. Visone, 30,204 (La.App.2d Cir.2/25/98), 708 So.2d 496, 498, set out the factual background:
Cardio, a Louisiana corporation, in 1979 entered into a two-year exclusive sales agreement with Telectronics, a pacemaker manufacturer domiciled in Colorado, to sell Telectronics products in six southern states, including Louisiana, Arkansas and Mississippi. In that same year, Cardio then separately contracted with John Visone, a Shreveport resident, to serve as Cardio's sales representative in north Louisiana and south Arkansas for roughly the same two-year period, 1979-1981, irrespective of which manufacturer or manufacturers supplied the products to be sold by Cardio during the contract period.
Notwithstanding this express provision, Visone unilaterally terminated his contractual relationship with Cardio after Telectronics terminated its contract with Cardio [for cause as the federal court later found] and accepted Telectronics' offer to serve as an exclusive sales representative of Telectronics in the same territory, as evidenced by a third contract in the record.
Visone was not a party to the federal court action, nor to the 1979 exclusive sales agreement between Telectronics and Cardio. The federal court's jurisdiction to adjudicate Cardio's breach of contract claim against Telectronics, the only claim asserted in the complaint, was premised solely on the diversity of citizenship between the two litigants. The only portions of the federal court record that appear in this record are the complaint, the district court's judgment and reasons for judgment, the per curiam affirmance by the 5th Circuit, and an excerpt from the trial transcript in which the court admonished Cardio's counsel, apparently during his cross-examination of Visone, to cease questioning the witness about the reasons for his departure from Cardio. The court stated:
... I let you touch on this for credibility purposes; but ... if you all want to file a lawsuit against this individual, that's another case at another time you all can litigate that one. But we are not going to litigate this agreement [between Cardio and Visone] and who violated what. (Our brackets.)
At this trial, John P. Visone, testified he began working as a customer service representative for Telectronics Proprietary Limited in 1975 in Buffalo, New York. Telectronics trained him to sell, distribute and assist doctors with pacemakers. Later he worked as a sale representative for the company in Detroit and Milwaukee. The regional sales director, Bob Bunch, approached Visone in 1978 about Visone moving to Shreveport where Telectronics' representative was Noel Gilbert, who operated through a corporation, Cardio Devices. According to Visone, Gilbert used his person and his corporation as one and the same.
When Visone moved to Shreveport in 1979, Telectronics paid for the move. His guaranteed salary for six months was $1800 per month, of which Telectronics paid $1000, while Gilbert paid $800. Telectronics continued to train Visone. During the six-month period from March to October 1979, there was no written agreement between Visone and Telectronics, Visone and Cardio or Visone and Gilbert. Visone stated he believed that he would be selling Telectronics pacemakers and testified Gilbert never told Visone he might be selling other brands. During that six-month *911 period, Visone did not know that Gilbert was negotiating with Telectronics' competitor, Pacesetter Systems.

Telectronics-Cardio Sales Representative Agreement
Gilbert and Telectronics entered a contract, the term of which was from May 18, 1979 to June 30, 1981. Visone was unaware that Gilbert negotiated the exclusion of a non-compete clause in his contract with Telectronics. The contract provided that Gilbert/Cardio was the "Representative" of Telectronics in six southern states including Louisiana. Cardio's status as the exclusive representative of Telectronics in the sales territory is not expressly stated in the agreement but was apparently understood and intended by the parties. The agreement required Cardio to meet a monthly sales quota, "to be decided at a later date, no later than 7/31/79." Telectronics agreed to pay a specified commission on each "quota unit" and a lesser commission on "other units."

Cardio-Visone Representative Agreement
At the end of the six-month period from March to October 1979, Gilbert prepared and sent a contract with a term from October 1, 1979 until September 30, 1981 for Visone to sign. Stating there were no negotiations, Visone signed because Gilbert threatened to withhold his commissions earned during the past month if he refused. Visone testified that he would not have signed the contract had he known that Gilbert was negotiating to sell pacemakers other than Telectronics products. Visone explained that he owed loyalty and obligation to Telectronics which had invested a lot of money and time in his training. Visone, who was 21 at the time, did not have an attorney review the contract and stated he could not afford legal assistance. Although the contract provided that Cardio might change the manufacturer of products sold, Visone testified that Gilbert never told him he might change manufacturers. Specifically, the contract stated:
... It is expressly understood by [Visone] that [Cardio] may from time to time ... add, delete, or change the manufacturers... of some of the products that [Cardio] sells ... and that [Visone] is cognizant of this possibility and hereby agrees ... that all provisions of this contract shall apply equally to any new or changed manufacturers.
Visone also agreed "not to represent or work for a competitor of [Cardio] or its pacemaker manufacturers" in the sales territory for one year after termination of the agreement with Cardio. 708 So.2d at p. 499.
Gilbert/Cardio had another sub-representative, Gilbert Halpern, who Visone later learned signed a representative agreement for a term from August 1, 1979 through July 31, 1980, containing a noncompete clause. Halpern signed an addendum to Gilbert's contract with Telectronics which stated that the sub-representative was bound to Gilbert's agreement with Telectronics. Visone testified he did not recall Gilbert submitting him the addendum for his signature. This court's previous opinion stated:
Visone asserted in the trial court that he "was a party to the contract between Cardio and Telectronics" by virtue of his having signed an addendum to his agreement with Cardio in which he bound himself to the terms and conditions of Cardio's exclusive sales agreement with Telectronics. That assertion or argument is the basis of Visone's contention that he was essentially a sub-representative or subagent of Telectronics during the time he worked for Cardio, and that his obligations under the agreement with Cardio were "derivative of and dependent on the continuation of Cardio's contractual relationship with Telectronics. Cardio disputes that assertion. Visone conceded at oral argument in this court that he is unable to locate and produce such a signed addendum to his contract with Cardio. 708 So.2d at p. 499.
*912 Visone testified that at a medical meeting in Houston in March 1980, Gilbert informed Visone that Gilbert was negotiating to market Pacesetter products. Visone refused Gilbert's request to meet Pacesetter representatives and declined to travel to California with Gilbert for additional meetings. Gilbert informed Visone that Telectronics was about to go bankrupt. Visone reported Gilbert's negotiations and the bankruptcy information to Bunch, Telectronics' regional sales director. Shortly after the California meeting, Gilbert informed Visone it was essential that he come to the New Orleans airport to meet with Nicholas Rutsis, the regional sales manager for Pacesetter. Visone reported the upcoming meeting to Bunch who advised Visone to attend and had Visone talk to Telectronics general counsel, Mr. Nealon. Gilbert paid for Visone's ticket.
According to Visone, he, Gilbert, Bunch and Nealon met at the airport in New Orleans. When Nealon asked Gilbert about his intentions vis a vis Telectronics, Gilbert was noncommittal. Nealon terminated Cardio's contract with Telectronics based on Gilbert's breach of the contract. Gilbert then met with Visone and attempted to persuade him to accompany Gilbert in selling Pacesetters with promises of stock in Cardio and Pacesetters. When Visone refused, Gilbert left. Visone returned to Bunch and Nealon who offered him employment with Telectronics which he accepted.

Visone-Telectronics Sales Agreement
In April 1980, more than a year before Visone's contract with Cardio expired and about the same time that Telectronics terminated its exclusive sales agreement with Cardio, Visone contracted directly with Telectronics to represent Telectronics in specified parishes and counties in Louisiana, Arkansas and Mississippi through December 31, 1981. This contract, like the others, provides for monthly sales quotas and commissions. Gilbert v. Visone, supra. Visone remained employed with Telectronics until 1995. Halpern also contracted to work with Telectronics while Gilbert/Cardio contracted with Pacesetters.

LITIGATION HISTORY
Gilbert/Cardio sued Telectronics in federal court in New Orleans in May 1980. Visone, a witness, and Halpern were not parties. In 1983, the federal court dismissed the claims of Gilbert/Cardio against Telectronics. The federal court ruled that Gilbert had breached his contractual obligations to Telectronics and attempted to induce Visone and Halpern to breach fiduciary obligations which they owed Telectronics even absent a written contract. This decision was affirmed by the federal appellate court in August 1984.
Gilbert/Cardio also sued Halpern in Tennessee in 1984, but that action was dismissed. The following sets out the tortured course of the present action:
September 1984 Gilbert/Cardio sued Visone in this action for breach of contract.
November 1984 Visone responded with numerous exceptions
May 1985 ~ Noel M. Gilbert, Cardio's principal, was dismissed from the action based upon Visone's exceptions of no cause and no right of action. At the same time, Visone exception as to nonjoinder of Telectronics was denied
~ Visone filed an answer and reconventional demand against Cardio for malicious prosecution, damages and attorney's fees
March 1986 Gilbert/Cardio's attorney files a change of address form
December 1988 ~ Visone's attorney files a notice of deposition of Gilbert
~ Cardio's attorney files a notice of deposition of Visone
January 1989 ~ Both sides noticed depositions of the other

*913 ~ Attorney for Gilbert/Cardio withdrew and another enrolled
February 1989 Both sides noticed depositions of the other
March 1989 Both sides noticed depositions of the other
October 1989 Cardio and Gilbert filed a first supplemental and amending petition along with discovery requests
November 1989 Visone answered first supplemental and amending petition and discovery requests
February 1992 Attorney for Gilbert/Cardio withdrew
November 1994 Gilbert in proper person filed a motion to set status conference, scheduling order and trial date
December 1994 Status conference postponed by agreement of Visone and Gilbert and rescheduled for January 1995
February 1995 Rule rescheduled by agreement to March 1995
March 1995 Visone filed Motion to Strike Gilbert's Motion to Set Status Conference, etc, and sought a Dismissal of the action for failure to prosecute
April 1995 Cardio's attorney filed opposition to Visone's Motion to Strike and to Dismiss
June 1995 Trial court opinion denying Visone's Motion to Strike and Dismiss
July 1995 Judgment and Notice of Judgment on Denial of Motion to Strike and Dismiss
March 1996 Scheduling Order setting August 21, 1996 trial date
June 1996 Visone filed Motion for Protective Order to avoid second deposition
July 1996 ~ Motion for Protective Order denied
~ Visone filed Pre-Trial Inserts
~ Visone filed Exception of Res Judicata
~ Cardio filed Motion to Compel Discovery and Sanctions
~ Cardio filed Notice of Deposition of Visone
~ Visone filed Second Motion for Protective Order
August 1996 ~ Visone filed Motion to Continue Trial
~ July letter from Gilbert's attorney objecting to Visone's request for continuance of trial
~ Trial judge continued trial "due mostly to fact that case ahead of this one on the docket would prevent this case from going to trial as scheduled"
~ Visone filed Emergency Motion to Quash Deposition of Howard Hofferman
~ Visone's Motion to Quash granted
~ Cardio's Motion and Order to set Hearing on Discovery and Sanctions
September 1996 Hearing set for October 21, 1996 on Cardio's Motion for Compelling Discovery and Sanctions and on Visone's Second Motion for Protective Order and Exception of Res Judicata
October 1996 Hearing
March 1997 ~ Trial Court's Ruling granting Exception of Res Judicata and not addressing other motions
~ Judgment sustaining Visone's Exception of Res Judicata and dismissing Cardio's claims with prejudice
~ Notice of Judgment
~ Cardio's Motion for Appeal filed and granted
March 1998 ~ This court's opinion rendered
~ Cardio answered Visone's reconventional demand
May 29, 1998 Scheduling order signed by trial judge and attorneys for Cardio and Visone
June 22, 1998 Visone's amended answer and reconventional demand added Gilbert personally as a defendant
June 29, 1998 Cardio's attorney withdrew and sent Gilbert letter strongly advising him to retain other counsel and *914 reminding him of trial date and scheduling deadlines
August 6, 1998 Two lawyers filed a Motion to Enroll for Gilbert/Cardio and to Continue the Trial
August 7, 1998 Visone filed opposition to continuance
August 1998 Trial court teleconference with Visone's attorney and attorneys seeking to enroll for Gilbert/Cardio
August 10, 1998 Lawyers withdrew Motion to Enroll and to Continue on Gilbert/Cardio's behalf
August 26, 1998 Visone filed Pretrial Order
September 2, 1998 Visone filed Motion in Limine to prevent Gilbert/Cardio from introducing any evidence since they did not file the required Pretrial Order
September 3, 1998 Gilbert/Cardio in Proper Person filed Motion for Sanctions and for Continuance
September 14, 1998 Gilbert/Cardio in Proper Person filed Motion to Set Hearing and to Reconsider Allowing Spruiell to Withdraw as Counsel or For Continuance
September 15, 1998 Visone filed an opposition to the September 14 filing
September 16, 1998 Gilbert/Cardio in Proper Person filed a Motion in Limine and Motion to Set Hearing along with an Opposition to Visone' Motion in Limine
September 17, 1998 Visone filed his pre-trial brief
September 18, 1998 Gilbert/Cardio in Proper Person filed a Motion for Sanctions and Continuance and Memorandum opposing Visone's Motion in Limine and Amended Reconventional Demand
September 21, 1998 Hearing at which the trial court granted Visone's motion in limine and refused to continue the trial
September 21, 1998 Gilbert/Cardio filed Motion to Request Judicial Review from the Second Circuit Court of Appeal
September 22, 1998 Trial
During the 15 years since filing, Gilbert has changed lawyers several times. Ford J. Dieth filed the suit in 1984 on Cardio's behalf. According to the minutes, Dieth withdrew and Walter White enrolled as counsel in January 1989. In 1992, White withdrew as counsel for Cardio and Gilbert. In 1992, Gary Parker signed pleadings for Gilbert/Cardio. In 1994, Byrne Dyer filed a motion for Gilbert to proceed in proper person. In February 1995, Aaron Brainard informed counsel for Visone that he decided not to enroll on Gilbert's behalf. In July 1995, Frank Spruiell was counsel of record for Gilbert/Cardio. Spruiell withdrew in June 1998.
Some 12 years after this suit was filed, Visone filed an exception of res judicata based upon the federal litigation. Although sustained by the trial court, the exception was reversed by this court and the matter was remanded for trial. In that opinion, this court noted that Cardio did not dispute the federal court's finding that Cardio is Gilbert's alter ego. Gilbert v. Visone, supra.
On June 22, 1998, Visone filed an amended answer and reconventional demand in which he named Gilbert personally as a defendant and sought from Gilbert/Cardio recission of Visone's employment contract along with damages and attorney's fees arising out of fraud and malicious prosecution. Gilbert's attorney, Spruiell, withdrew on June 30, 1998, some three months before the scheduled trial.
On August 6, 1998, attorneys filed a combined motion on behalf of Gilbert/Cardio seeking to enroll and a continuance of the September 22 trial date. When approached by the enrolling attorney about a continuance, Visone's attorney refused to agree to anything, since the matter had been set for trial since May 1998. At a telephone conference among the judge, Visone's *915 attorney, and the enrolling attorney, the attorney stated she did not have a conflict on that date, but felt there was insufficient time to prepare. The trial court denied the continuance and the attorneys declined to enroll in the case.
Gilbert was present on September 21, the day before trial, to argue motions. Gilbert argued he was unrepresented because the lawyers who tried to enroll refused to do so after the trial court stated no continuance and no extensions of the scheduling order would be given. Contending he had contacted four or five other attorneys after Spruiell withdrew, Gilbert maintained that no attorney would represent him because the trial court would not continue the trial date. Pointing to what he described as his "catch 22" situation, he noted that Visone's attorney had cited a case in which sanctions had been imposed and that he personally had only recently been brought into the case as a defendant in reconvention. Gilbert also suggested that the motions and exceptions filed by Visone's attorney had also contributed to the length of the litigation.
The trial court granted Visone's motion in limine which prohibited Gilbert/Cardio from introducing witnesses or filing documents since no pretrial order had been filed. Gilbert then attempted to file a motion which the trial court refused with the instruction that Gilbert had to make the filing with the Clerk of Court. That was apparently Gilbert's attempt to seek supervisory review from this court the day before trial.
Gilbert did not appear at the trial on September 22, 1998. The trial court placed into evidence a letter faxed from Mr. Gilbert which accused the court of being prejudiced against plaintiff. Concerning Gilbert/Cardio's request for judicial review, the trial court stated that if Gilbert was attempting to take writs, he had not followed the required procedure of filing a notice of intent and seeking a return date.
The trial court also stated its recollection that at the August telephone conference among the attorney's trying to enroll for Gilbert/Cardio and Visone's attorney, along with the trial judge, no request was made to the court for amending the scheduling order to delay filings under the pretrial order once the trial court explained it would not grant a continuance of the trial. After the attorney did not enroll, Gilbert did not obtain other representation and filed neither a pretrial order nor a list of witnesses and exhibits. At the motion in limine the day before trial, the court concluded that based upon Gilbert's attempts at pro se representation and motions filed that Gilbert was aware of and had the capacity to understand that he was obligated to furnish the court and the opposing counsel a list of witnesses and exhibits. Because he had not, the trial court ruled that Gilbert could not offer witnesses about whom he had not informed Visone's attorney and could not offer exhibits which he had not given the defendant an opportunity to review. The trial court granted Visone's motion to dismiss the plaintiff's case while reserving Visone's right to proceed with his amended reconventional demand which Gilbert had never answered.
Trial was held on Visone's reconventional demand. In addition to Visone's testimony discussed above and documentary evidence, Visone's attorney testified his bills totaled $46,495.27 through July 1998. Since then his bills have totaled $12,402.80. Visone stated that the lawsuit had been a daily, constant burden and source of anxiety as well as a draining experience and a financial exposure due to attorney's fees, time and effort. The trial court awarded Visone $50,000 in damages for pain, suffering and malicious prosecution and awarded him $60,000 in attorney's fees. Gilbert/Cardio appealed. Visone answered the appeal and seeks an award of attorney's fees for the work done on this appeal.

*916 REASONS FOR JUDGMENT

The trial court found that Visone was a subagent of Telectronics to which he owed a fiduciary duty. Although he owed a duty of loyalty and obedience to Gilbert/Cardio, his immediate employer, Visone would have violated his duty to Telectronics if he had acted contrary to Telectronics' directions. Gilbert/Cardio had breached their obligation to Telectronics and attempted to entice Visone and Halpern to do likewise. The agreement between Gilbert/Cardio and Telectronics required Gilbert/Cardio to get signatures of its subrepresentatives (Halpern and Visone) acknowledging they understood and agreed to the terms of the agency representative agreement between Cardio and Telectronics. Gilbert got Halpern's signature, but not Visone's.
Visone contracted with Gilbert/Cardio's with the expectation that he would sell Telectronics pacemakers. Gilbert knew or should have known that Visone would not have contracted with Gilbert/Cardio if Visone had known Gilbert/Cardio was going to change manufacturers. The trial court found that:
 The principal cause of Visone's contract with Gilbert/Cardio was Visone's selling Telectronics products.
 Gilbert knew that.
 Visone's consent to the representative contract with Gilbert/Cardio was obtained by fraud which rescinded the contract.
 The required elements to support a claim of malicious prosecution were present.
&star; Gilbert/Cardio continued the action for fourteen years.
&star; Gilbert/Cardio caused the action to continue over this long period.
&star; Since Gilbert/Cardio did not appear at trial, there was a bona fide termination in favor of Visone.
&star; Gilbert/Cardio had no probable cause to bring this action against Visone.
&star; Gilbert/Cardio brought the action for malice only.
&star; Visone was damaged.

DISCUSSION
Under the provisions of La. C.C.P. art. 1601, a continuance may be granted in any case if there is good ground therefor. The trial court has great discretion in granting or denying a motion for a continuance under this provision; that discretion will not be disturbed on appeal in the absence of a clear abuse of discretion. However, an abuse of discretion occurs when such discretion is exercised in a way that deprives a litigant of his day in court. Whether a trial court should grant or deny a continuance depends on the particular facts of each case. Some factors to consider are diligence, good faith and reasonable grounds. Of equal importance is the other litigants' corresponding right to have the case heard as soon as practicable. The trial court must also weigh the condition of the trial docket, fairness to both parties and other litigants before the court, and the need for orderly and prompt administration of justice. Generally, a litigant whose lawyer withdraws at or near trial may be entitled to a continuance to employ another attorney. However, a party is not entitled to indefinite continuances simply because he is unable to obtain counsel. Walker v. Aulds, 28,968 (La.App.2d Cir.12/11/96), 685 So.2d 421.
On appeal, Gilbert/Cardio contends that three attorneys left him/it "in the lurch." In May 1998, attorneys for Gilbert/Cardio and Visone, along with the trial court, set out the deadlines for pre-trial matters and set a September 22, 1998, trial date. On June 22, Visone filed an amended answer and reconventional demand which added Gilbert personally as a defendant and sought recission of the employment contract, damages for fraud and malicious prosecution and attorney's fees. On June 29, the last day for filing motions or amended pleadings, Gilbert's attorney filed a motion to withdraw which was *917 granted on June 30 by a trial judge to whom the case was formerly assigned. The record shows that in August Anita McKeithen and Ginger Johnson filed a motion to enroll and to continue the matter. The trial court made a notation on August 10, 1998, that, following a telephone conference, the motion was withdrawn.
Gilbert/Cardio, in proper person, filed motions for continuance on September 3, 14 and 18. At the hearing on September 21, Gilbert informed the court that he had diligently contacted four or five other attorneys to represent him after Spruiell withdrew in the end of June. He argued that in good faith he sought to retain other counsel, but that no attorney, except the ones who tried to enroll, would agree to take his case, since the scheduling order was in place. The enrolling attorneys declined to enroll when the trial court stated there would be no continuance and no adjustment to the scheduling order.
Gilbert also alluded to the case cited by Visone's attorney regarding sanctions and dismissal. Gilbert correctly argued that case L & M Hair Products, Inc. v. State of Louisiana, 29,998 (La.App.2d Cir.12/10/97), 704 So.2d 415, an expropriation matter, was distinguishable from this dispute because Gilbert was ready and willing to have trial, but could not prepare because he had no lawyer and he could not get a lawyer because of the trial court's rulings on the continuance. In L & M, supra, Clark, the non-lawyer owner of the corporation, personally intervened in the suit and also acted as representative of the corporation and made pro se filings on its behalf during some of the litigation. Pursuant to a scheduling order, the case was called to trial. The trial court stated it would not proceed until Clark filed a pretrial order with his witnesses and exhibits. Clark refused after being warned three times by the trial court that it would dismiss his intervention. When Clark refused to comply, the court dismissed his intervention. Concerning the corporation, L & M's attorney explained that Clark, as president of L & M, controlled the case and the attorney could do only what Clark instructed. The trial judge stated L & M's case would be dismissed if no pre-trial order was filed by the end of that day. The following morning when neither Clark nor L & M had made filings or appeared, the trial court dismissed the case after being informed by the attorney for the state that Clark had instructed L & M's attorney not to comply with the court's order. On appeal, this court affirmed the dismissal while observing that dismissal with prejudice is an extreme penalty which should only be applied in extreme circumstances. The trial court had on three occasions warned Clark and L & M that failure to file pre-trial orders would result in the action being dismissed with prejudice. This court noted that the forcefulness with which Clark stated his position to the trial court left no doubt that more time or a less drastic sanction would have been ineffective. At oral argument, the state asserted that Clark's personal representation of L & M on appeal constituted the unlawful practice of law, a violation of La. R.S. 37:213. Since the decision affirmed the dismissal of Clark's intervention and L & M's action, this court did not reach that issue.
Contending that the trial court properly exercised its discretion in refusing to continue the trial date and that Gilbert was not diligent in attempting to obtain a new attorney, Visone relies upon Gilcrease v. Bacarisse, 26,318 (La.App.2d Cir.12/7/94), 647 So.2d 1219, writ denied, 95-0421 (La.3/30/95), 651 So.2d 845, in which this court affirmed the trial court's denial of the continuance and dismissal of the case. Gilcrease had five different attorneys during the eight years the matter had been pending. Her last attorney withdrew 18 months before the final trial date. A previous dismissal against Gilcrease had been vacated and Gilcrease had upset three of five previous trial dates and one rule date because she needed more time to get counsel. Gilcrease had refused to cooperate *918 with her own attorneys and defendants. Gilcrease had sought indefinite continuances and had been granted several to get representation.
Fairness to both parties and the need for orderly administration of justice are proper considerations in deciding whether to grant or deny a continuance. The trial court could not possibly have predicted when, or if, plaintiff would retain an attorney, and the court cannot be closed to defendants who wish to have the case resolved. Plaintiff is not entitled to indefinite continuances simply because she contends she is unable to secure counsel. 647 So.2d at p. 1223. (Citations omitted.)
In Every v. City of New Orleans, 514 So.2d 556 (La.App. 4th Cir.1987), writ denied, 515 So.2d 1111 (La.1987), three different attorneys representing plaintiff withdrew. Over the course of the litigation, the defendants obtained four continuances of trial dates, one was continued by agreement, one by order of the trial court who was attending a seminar, and one by plaintiff. After plaintiff's last attorney withdrew on January 27, the magistrate sent a notice of trial set for March 17, 1986. When plaintiff appeared unrepresented, she was granted an additional 30 days to get a lawyer and warned the case would be dismissed unless she was represented by a lawyer or represented herself. On April 17, plaintiff sought a continuance to get a lawyer and her action was dismissed. The appellate court found plaintiff had not been diligent in seeking a lawyer and affirmed the dismissal.
While it is as clear to this court as it was to the trial court that this matter has been pending far too long, it is not clear that the entire length of the litigation can be attributed to Gilbert/Cardio. Earlier in the litigation, matters were continued on occasions by agreement. When Visone sought to continue a trial date, Gilbert/Cardio communicated his opposition. However, the trial court's order indicates the matter would have been continued in any event due to matters ahead of this case on the docket. Gilbert actively tried to obtain representation after his attorney of several years withdrew immediately after Gilbert was personally brought back into the litigation as a defendant in reconvention.
In contrast, the litigants in both Gilcrease, supra, and Every, supra, were granted continuances to seek counsel and returned to court unrepresented prior to the dismissal of their litigation. Gilbert was not granted that relief. Even in the extreme situation in L & M Hair, supra, the uncooperative litigant was given repeated opportunities to avoid having the case dismissed and given until the end of the day to make the mandated filing. Gilbert was not afforded similar relief in this case.
When Gilbert learned he would be unable to present witnesses or documents at trial, he attempted to seek supervisory review from this court with a filing in the district court which the trial court refused to accept in open court. Gilbert then made the filing with the Clerk of Court. At trial the next day, the trial judge noted that Gilbert's filing failed to comply with the procedural rules for filing writs. However, the filing is one more indication that Gilbert was desperately trying to secure more time to obtain legal counsel.
While Gilbert erred in failing to appear on the date of trial, he had been diligent in seeking to have the trial date continued. Further, he had been informed of the L & M Hair, Inc. v. State of Louisiana, supra, decision in which the sanction of dismissal was imposed. Further, that opinion alluded to the possible illegality of a non-lawyer representing a corporation at a trial.
In Board of Sup'rs of L.S.U. v. Holt, 572 So.2d 759 (La.App. 4th Cir.1990), Holt's attorney withdrew one month before trial. Holt did not appear at trial. The director of the Loyola Legal Clinic appeared only to seek a continuance. Holt did not qualify for assistance from the clinic and the director had been unable to help her get *919 another lawyer due to the short time before trial. The trial court denied the continuance, trial was held, and judgment was entered in favor of L.S.U. In reversing the judgment and remanding the matter, the court found that the trial court erred in denying the continuance. The court noted this was only the second trial date, the short time before trial when Holt's attorney withdrew and Holt's diligence in seeking an attorney.
This court acknowledged in Walker v. Aulds, supra, that the trial court's discretion ordinarily should be exercised in favor of granting a continuance to a plaintiff no longer represented by counsel, since the continuance affords the party additional time to get a lawyer and have his day in court, even when the party has not been diligent in obtaining new counsel. This court relied upon Shields v. Crump, 499 So.2d 479 (La.App. 2d Cir.1986) which reversed the trial court's denial of a continuance based upon the supreme court's summary reversals of this court's earlier denials of continuances in Roland v. Tedesco, 426 So.2d 175 (La.1983) and Brown v. Louisiana State Medical Center, et al, 472 So.2d 909 (La.1985).
In fairness to Visone and to the orderly administration of justice, this matter which has been lingering for years in the judicial system needs to be resolved. Like the court in Board of Sup'rs, supra, this court recognizes the trial court's discretion in matters of continuances and also understands the trial court's difficulties and frustrations dealing with disruptive, burdensome continuances which impend moving the docket.
This record makes it clear that Gilbert/Cardio made efforts to obtain legal representation after his lawyer withdrew the end of June before the September trial date. Those efforts were thwarted by his inability to obtain a continuance of the trial. Both parties and the administration of justice have undoubtedly been prejudiced having this matter interminably unresolved.
The trial court understandably was zealous in its efforts to bring this matter to a conclusion and Gilbert is not without fault in the conduct of this litigation. Visone's recent amendment adding Gilbert personally as a defendant in reconvention complicated the matter. Almost simultaneously Gilbert/Cardio's attorney withdrew. Even if we assume Gilbert could have been more diligent during the months of July and August 1998 in seeking other counsel, fairness dictates that he should have been afforded additional time to get an attorney before imposition of the severe penalty of dismissal of his case and the immediate trial of the reconventional demand. The trial court's refusal to grant Gilbert a continuance of the trial to obtain a lawyer essentially deprived him of his day in court.
Under the particular facts of this case, we reluctantly conclude that the trial court abused its discretion in failing to grant a continuance to give Gilbert time to seek counsel, file pretrial orders and prepare for trial. Therefore, the judgment of the trial court is vacated and set aside. The matter is remanded to the trial court which is instructed to set a reasonable amount of time (1) for Gilbert/Cardio to procure legal representation, (2) for entry of an order setting pretrial deadlines in a scheduling order and (3) for a trial date in this matter. Because we find this matter should have been continued, it is unnecessary to address the other issues raised by the parties on appeal.

DECREE
For the foregoing reasons, the judgment of the trial court is vacated and set aside and the matter is remanded for further proceedings in accordance with these instructions. Costs of this appeal are to be paid equally by Gilbert/Cardio and Visone.
VACATED AND REMANDED.