765 So.2d 480 (2000)
Paul C. DEMOPULOS, Plaintiff-Appellant,
v.
Dr. James M. JACKSON, et al., Defendants-Appellees.
No. 33,560-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*482 Richard L. Fewell, Jr., West Monroe, Counsel for Appellant.
Rountree, Cox, Guin & Achee by Gordon E. Rountree, Sandra P. Haynie, Shreveport, Counsel for Appellees.
Before CARAWAY, KOSTELKA, CRIGLER (Pro Tempore), JJ.
KOSTELKA, J.
Claiming that the trial court erred in denying his request for a continuance, this medical malpractice plaintiff now appeals the dismissal of his action following the granting of two motions for summary judgment. Finding no error below, we affirm.

Facts and Procedural History
On February 25, 1994, in conjunction with a visit to the emergency room, Paul Demopulos ("Demopulos") was admitted to the Willis Knighton Medical Center ("WKMC") for evaluation of his complaints of pain, numbness, and bluish discoloration to the fingers of his right hand. Dr. James M. Jackson ("Dr.Jackson"), Demopulos's treating internist, in consultation with a vascular surgeon, Dr. Frederick W. Knight ("Dr.Knight"), and a radiologist, Dr. Andrew J. Marsala ("Dr.Marsala"), conducted extensive testing but could not locate any source for the supposed embolic phenomena. Instead, the physicians suspected vasospasm in Demopulos's right radial artery area and proceeded with appropriate treatment. By the following day, Demopulos's symptoms had subsided and he was discharged from the hospital with medications and instructions. Demopulos was scheduled to see Dr. Jackson in one week for a follow-up examination. However, two days later, on February 28, 1994, Demopulos was admitted to Schumpert Medical Center after suffering a stroke on the right side of his brain. The radiologist at this facility was able to discover a pedunculated thrombus in an artery which had likely caused Demopulos's stroke.
Believing that the physicians at WKMC had misdiagnosed his condition and that a proper diagnosis and appropriate treatment would have prevented the stroke on February 28, Demopulos filed a malpractice claim with the Patient's Compensation Fund against Drs. Jackson, Knight, and Marsala on February 16, 1995. At the request of the parties, the medical review panel was extended three times before rendering its unanimous opinion on June 9, 1998. The panel concluded that the defendants had met the applicable standard of care and that the conduct complained of was not a factor in causing the asserted resultant damages.
Demopulos then filed suit in district court against these same three doctors on September 21, 1998. Almost five months later, Demopulos's attorney filed a motion to withdraw as counsel of record.[1] In an order dated February 17, 1999, the trial court granted the attorney's motion and allowed Demopulos thirty days in which to obtain what would be his fourth attorney of record. Thereafter, Demopulos participated, in proper person, in a scheduling conference and received the resultant scheduling order dated May 3, 1999. In accord with that order,[2] Dr. Jackson filed a *483 motion for summary judgment on May 6, 1999; a hearing was set for May 24, 1999. Demopulos failed to attend court that date and the motion was granted.[3] Likewise, Drs. Marsala and Knight each moved for summary judgment in late May 1999. The court set these hearings for June 28, 1999.
Despite the February 17 order granting thirty days to obtain new counsel, Demopulos failed to engage present counsel until June 21, 1999one week before the scheduled summary judgment hearing. Counsel for Demopulos filed a motion to continue on June 24 in which he stated a desire to conduct additional discovery, including deposing Drs. Jackson, Knight, and Marsala. This motion was argued before the court at the June 28 hearing. The trial judge denied Demopulos's request and proceeded with the summary judgment motion. Demopulos opposed summary judgment simply by arguing that he might not need expert testimony to prove his case. Finding no genuine issue of material fact, the trial court granted summary judgment. Demopulos appealed.

Discussion
A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Louisiana Health Services v. Brown Builders, 32,575 (La. App.2d Cir.12/08/99), 747 So.2d 708. Facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Hardy v. Bowie, 98-2821 (La.09/08/99), 744 So.2d 606.
With the 1997 amendment to La. C.C.P. art. 966, the jurisprudential presumption against granting summary judgment has been eliminated. Louisiana Health Services, supra. Indeed, the summary judgment procedure is now favored to secure the just, speedy, and inexpensive determination of all except certain disallowed actions. La. C.C.P. art. 966A(2).
Under the current summary judgment approach, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings but must present evidence which will establish that material facts are still at issue. Louisiana Health Services, supra.
In support of his motion for summary judgment, Dr. Marsala presented the opinion and written reasons of the medical review panel to demonstrate that he had met the standard of care in his examination and treatment of Demopulos. He additionally offered his own affidavit explaining the thoroughness with which he conducted his examination and concluding that he met the requisite standard of care. Finally, this physician offered the deposition testimony of the radiologist, Dr. William Gallman ("Dr.Gallman"), who performed the arteriogram after Demopulos suffered his stroke. Although this physician was able to find an unusual pedunculated thrombus which likely had caused the stroke, he further explained that he did not think that phenomenon had been present when Dr. Marsala performed the arteriogram a few days earlier. Indeed, upon reviewing the images procured by Dr. Marsala, Dr. Gallman concluded that Dr. Marsala had performed a thorough investigation and that Dr. Marsala's examination and interpretation *484 of the results met the standard of care for radiologists.
Dr. Knight also offered the opinion of the medical review panel that his treatment met the standard of care along with the panel's written reasons. His own affidavit outlined the examination and care of Demopulos during his brief stay at WKMC. Dr. Knight concluded that his actions, as well as the course of treatment prescribed, fell within the standard of care. Dr. Knight additionally offered the deposition of Dr. Gallman as well as the affidavit of a fellow vascular surgeon who concluded that Demopulos had received the proper treatment and that Dr. Knight (and Dr. Marsala) met the standard of care.
Demopulos made no factual opposition to the motions of Drs. Marsala and Knight. Instead, as his only challenge on the merits, Demopulos argues that not all medical malpractice cases require the presentation of expert testimony in order for the plaintiff to prevail. Indeed, expert testimony is not required where the physician does an obviously careless act (e.g., fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body) from which a lay person can infer negligence. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228. Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which require no expert testimony to demonstrate the physician's fault. Id.
The case before us clearly does not represent an instance of obvious negligence on the part of the physicians. Instead, it contains complex medical issues. In a medical malpractice action, a plaintiff must establish the standard of care applicable to the charged physician, a violation of that standard of care, and a causal connection between the physician's alleged negligence and the plaintiffs resulting injuries. La. R.S. 9:2794. Expert witnesses who are members of the medical profession are necessary sources in actions such as these to determine whether the defendant possessed the requisite degree of skill or knowledge or failed to exercise reasonable care and diligence. Lee v. Wall, 31,468 (La.App.2d Cir.01/20/99), 726 So.2d 1044. This is especially true where, as in the instant case, the defendant physicians have filed motions for summary judgment supported with expert opinion evidence that their treatment met the applicable standard of care. Id. Demopulos offered no evidence, expert or otherwise, in opposition to the persuasive documents supplied by defendants. Thus, there is no genuine issue of material fact and summary judgment was properly granted.
Demopulos also challenges the trial court's denial of his motion for continuance. Under the provisions of La. C.C.P. art. 1061, a continuance may be granted in any case if there is good ground therefor. The trial court has great discretion in granting or denying a motion for a continuance under this provision; that discretion will not be disturbed on appeal in the absence of a clear abuse of discretion. Gilbert v. Visone, 32,303 (La.App.2d Cir.10/27/99), 743 So.2d 909. Whether a trial court should grant or deny a continuance depends on the particular facts of each case. Some factors to consider are diligence, good faith, and reasonable grounds. Of equal importance, however, is the other litigants' corresponding right to have the case heard as soon as practical. Id.
Demopulos argues that he did not have adequate time for discovery. Particularly, he notes that the May 3, 1999 scheduling order set a discovery cut off date of thirty days before the November 29, 1999 trial. Thus, Demopulos contends, he should have been allowed until the end of October to conduct any needed discovery and should not have been required to produce an expert witness for a June 1999 summary judgment hearing. While the scheduling *485 order would, indeed, allow discovery to continue through October, the same order mandated that all dispositive motions (which would include summary judgment motions) be filed within forty-five days of the order. The defendant physicians clearly did not file their motions prematurely.
Moreover, La. C.C.P. art. 966C(1) allows summary judgment motions to be filed after adequate discovery or after a case is set for trial. Not only had the matter already been set for trial at the time the motions were filed, but Demopulos also had more than adequate opportunity for discovery. More than five years had passed since the alleged act of malpractice. The dispute had been pending since Demopulos filed his claim with the Patient's Compensation Fund in February 1995. Within the framework of a summary judgment motion, discovery need not be completed and a party may not rely upon his own delinquency in conducting that discovery to prevent a summary judgment. American Central Insurance Co. v. Hilman, 32,315 (La.App.2d Cir.09/22/99), 744 So.2d 190. Demopulos clearly had adequate time to conduct some sort of discovery.[4] While we agree that Demopulos's fourth attorney had very little time to prepare an opposition to the summary judgments, we find no abuse of discretion in denying a continuance to a party whose unpreparedness is due to his own unexplained delay in securing counsel. Cf. Fidelity Nat. Bank of Baton Rouge v. Coleman American Moving Services, Inc., 398 So.2d 556 (La.App. 1st Cir.1980).
Nor are we impressed with Demopulos's argument, raised for the first time on appeal, that he suffered prejudice in that defendants had not yet answered the interrogatories propounded with the original petition. Not only had Demopulos not pursued the answers to these interrogatories, but defense counsel explained that the information sought had already been procured during the medical review panel procedure.

Conclusion
Finding no error in the denial of Demopulos's motion for continuance and determining that the summary judgments were properly granted in favor of Dr. Knight and Dr. Marsala, we affirm the judgment below at Demopulos's costs.
AFFIRMED.
NOTES
[1] Demopulos's original attorney filed the initial claim against the Patient's Compensation Fund. Demopulos employed a second attorney after his original counsel withdrew in October 1996. A third attorney was employed sometime before the lawsuit was filed in September 1998 but, as noted above, filed a motion to withdraw on February 16, 1999.
[2] The scheduling order directed that all dispositive motions be filed within forty-five days.
[3] Demopulos did not appeal the grant of summary judgment in favor of Dr. Jackson.
[4] See, e.g., Simoneaux v. E.I. du Pont de Nemours, 483 So.2d 908 (La.1986) (wherein the supreme court noted that the parties had, indeed, been given a fair opportunity to conduct discovery and to present their claims); Berzas v. OXY USA, 29,835 (La.App.2d Cir.09/24/97), 699 So.2d 1149 (summary judgment was not denied where the plaintiffs had undertaken no discovery in the five years the suit had been pending); Barron v. Webb, 29,707 (La.App.2d Cir.08/20/97), 698 So.2d 727, writ denied, 97-2357 (La.11/26/97), 703 So.2d 651 (summary judgment was proper where plaintiff made no effort to locate witnesses for deposition); Orillion v. Alton Ochsner Medical Foundation, 97-115 (La.App. 5th Cir.05/28/97), 695 So.2d 1063, writ denied, 97-1725 (La.10/13/97), 703 So.2d 617 (one year between the petition and motion for summary judgment had given parties adequate time for discovery); Guillory v. Dr. X, 96-85 (La.App. 3d Cir.08/28/96), 679 So.2d 1004 (one and one-half years afforded plaintiff ample time in which to gather some evidence to support the allegations of her petition); Fisk v. Mathews, 525 So.2d 223 (La. App. 1st Cir.1988) (party could not prevent summary judgment where it made no showing that serious efforts at discovery had been made).