786 So.2d 913 (2001)
Joe W. VINSON, Plaintiff-Respondent,
v.
Clifton W. SALMON, M.D., et al, Defendant-Applicant,
State of Louisiana, Intervenor.
No. 34,582-CW.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
Gordon Rountree, New Orleans, Counsel for Applicant.
Eskridge E. Smith, Jr., Bossier City, Counsel Respondent.
E. David Gilmer, Baton Rouge, Counsel for Intervenor.
Before NORRIS, WILLIAMS and PEATROSS, JJ.
WILLIAMS, Judge.
The defendants, Clifton Salmon, M.D. and the Claiborne Family Medical Clinic, appeal the trial court's denial of their motion for summary judgment. For the following reasons, we reverse and render.

FACTS
On June 9, 1995, Joe Vinson was operating a tractor while working at the LSU Hill Farm Research Station located in Homer, Louisiana. In the afternoon, the tractor failed to start and Vinson, who was not wearing gloves, reached into the battery compartment with his left hand to determine if the battery cables were attached. The battery exploded, propelling acid onto his left hand and forehead. A co-worker drove Vinson from the field and *914 they arrived at the research station shop within three to five minutes. Vinson washed the battery acid from his hand and face with soap and water. Vinson felt pain in his left hand and was transported to the emergency room at Homer Memorial Hospital. He waited approximately 25 minutes, but did not receive treatment because a doctor was not available. Vinson was referred to Dr. Clifton Salmon's office at the Claiborne Family Medical Clinic. After arriving at the clinic, Vinson was taken to an examination room by Nurse Kim Sims. She provided Vinson with a pan of cold water and soap, and he again washed his hand.
Dr. Salmon, a family practitioner, took Vinson's history and examined his hand. Dr. Salmon observed that the hand appeared red, but he did not see any indication of acid residue on the surface of the hand. At that time, Dr. Salmon believed that Vinson had sustained a first-degree burn. Dr. Salmon ordered a tetanus injection, Silvadene antibiotic ointment for the hand and Lorcet for pain. He instructed Vinson to return for a follow-up visit in seven days. Nurse Sims gave the injection, applied the ointment and wrapped Vinson's hand in a bandage.
The pain in Vinson's hand persisted and he returned to Homer Hospital four days later. He was seen by Dr. Salmon's partner, Dr. Donald Haynes, who observed black discoloration of the hand and reapplied Silvadene. The following day, June 14, 1995, Dr. Salmon saw Vinson and noted black discoloration of his left fingers, but did not see any infection. Dr. Salmon xrayed the hand to make sure the bones were not fractured, applied Silvadene again, gave Vinson Naprosyn and continued the Lorcet.
When Dr. Salmon next saw Vinson on June 20, the skin on his hand was peeling. Dr. Salmon did not see any signs of infection, but noted that the wound appeared "soupy." Dr. Salmon debrided (removed dead skin) from the area with scissors and a chemical debriding cream, Collagenase, and changed the antibiotic to Polysporin. The next day, Vinson was still in pain and he was seen by Dr. Haynes, who diagnosed Vinson with infected burns to the hand and admitted him to the hospital for treatment, including intravenous antibiotics. The condition of Vinson's hand did not improve and Dr. Haynes referred him to Dr. John Knight, an orthopedic surgeon specializing in hand injuries. Dr. Knight's treatment has included thirteen surgical procedures to Vinson's hand.
The plaintiff, Joe Vinson, submitted this matter to a medical review panel seeking an evaluation of the treatment provided by Dr. Salmon. The panel of three family practitioners issued a unanimous opinion that Dr. Salmon had satisfied the standard of care and that plaintiff had not proven causation, finding that the penetrating chemical burn had injured his hand almost instantaneously, before any treatment could be given.
Subsequently, plaintiff filed a petition for damages alleging medical malpractice against the defendants, Dr. Salmon, the Claiborne Family Medical Clinic and Homer Memorial Hospital. The plaintiff later reached a settlement with the hospital, which was dismissed from the suit. The remaining defendants filed a motion for summary judgment, supported by the medical review panel opinion, the affidavits of Dr. Salmon, Dr. Haynes and Nurse Sims, the medical records and the depositions of plaintiff and Dr. Knight. The plaintiffs opposition to the motion for summary judgment consisted of a report written by Dr. H.D. Peterson, a burn specialist who had been hired by the hospital, and an article on the treatment of chemical burns published in a medical journal. Plaintiff *915 did not present any other expert medical opinion.
After a hearing, the trial court denied the defendants' motion for summary judgment, finding that genuine issues of material fact remained. Defendants applied to this court for a supervisory writ to review the trial court's decision. This court granted the writ and ordered that this matter be docketed as an appeal. Vinson v. Salmon, 34,582-CW (La.App.2d Cir.10/26/00).

DISCUSSION
In two assignments of error, the defendants contend the trial court erred in denying the motion for summary judgment. Defendants argue the plaintiff could not satisfy his evidentiary burden at trial without expert medical testimony to establish the standard of care and a breach thereof by Dr. Salmon.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the movant will not bear the burden of proof at trial on the matter, the mover is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA-C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the movant is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
In a medical malpractice action, the plaintiff must establish the standard of care ordinarily exercised by physicians under similar circumstances, a violation of that standard of care and a causal connection between the physician's alleged negligence and the plaintiffs resulting injuries. LSA-R.S. 9:2794; Demopulos v. Jackson, 33,560 (La.App.2d Cir.6/21/00), 765 So.2d 480. The Louisiana Supreme Court has found that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Pfiffner v. Correa, 94-0924, 0963, 0992 (La.10/17/94), 643 So.2d 1228.
Though in most cases, because of the complex medical and factual issues involved, a plaintiff who does not present medical expert testimony will likely fail to sustain his burden of proving his claim under the requirements of R.S. 9:2794, there are instances in which the medical and factual issues are such that a lay jury could perceive negligence in the defendant physician's conduct as well as any expert, or in which the physician testifies as to the standard of care and there is objective evidence which demonstrates a breach thereof. Pfiffner, supra. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife or scalpel on a patient or leaving a sponge in a patient's body, from which a lay person can infer negligence. Pfiffner, supra; Demopulos, supra.
*916 In the present case, defendants submitted into evidence the opinion and written reasons of the medical review panel, which concluded that Dr. Salmon had met the standard of care in his treatment of plaintiff. Additionally, defendants presented the deposition testimony of Dr. Knight, who stated that he did not have any criticism of the care given by Dr. Salmon and would not have done anything differently in the initial treatment of the burn. Defendants also offered the medical records and the affidavits of Dr. Salmon, Dr. Haynes and Nurse Sims describing the treatment provided to plaintiff. In opposing the motion for summary judgment, plaintiff introduced the report of Dr. Peterson and asserted that the guidelines for the treatment of chemical burns, as published in an article in the journal American Family Physician, were sufficient to establish the standard of care applicable in this case without the need for expert testimony.
In his brief, the plaintiff argues that expert testimony is not required because a jury could determine that the treatment by Dr. Salmon did not follow the guidelines and was thus a breach of the standard of care. In support of his argument, plaintiff cites Terrebonne v. Floyd, 99-0766 (La. App. 1st Cir.5/23/00), 767 So.2d 758, in which the court found that evidence of the physician's deviation from the manufacturer's specific warning about when to administer a drug was sufficient to establish the standard of care owed. However, the factual situation in Terrebonne can be distinguished from that of the present case.
The Terrebonne case involved the specific timing of a drug dosage. In contrast, the present matter involves more complex medical issues, including the appropriateness of the diagnosis and treatment provided by Dr. Salmon. In addition, unlike the mandatory nature of the manufacturer's instructions, the language of the guidelines provides for the exercise of discretion by the treating physician based on the circumstances of the particular situation. Thus, the cited case is not persuasive support of plaintiff's position.
Plaintiff also contends that Dr. Salmon's failure to schedule an earlier follow-up visit and his use of a bandage to cover the burn violated the guidelines and constitute evidence of a breach of care. However, when he was asked during his deposition about the need for earlier follow-up in this case, Dr. Knight testified that observation was the primary method for determining the extent of a burn and that generally one would not see signs indicating that a chemical burn was progressing within 48 hours. Dr. Knight stated that "the key [issue] is what are you going to do differently" if the physician follows up with a patient earlier, and that he would not want to debride tissue if it was not necessary. Dr. Knight opined that the primary treatment in this type of situation is a tetanus shot, antibiotics and the use of Silvadene ointment to neutralize, cool and lubricate the tissue.
Additionally, Dr. Knight specifically testified that he would not agree with the guideline stating that a "closed dressing" should not be used on a chemical burn. Dr. Knight explained that the topical ointment needed to be liberally applied and the purpose of wrapping the patient's hand with gauze is to hold the Silvadene on the skin and prevent it from getting rubbed off by contact with clothing. In light of the foregoing testimony, the plaintiffs argument that a jury would be able to determine a breach of the standard of care simply by comparing the treatment provided by Dr. Salmon with the published guidelines lacks merit.
A medical malpractice plaintiff must show by a preponderance of evidence that as a result of the defendant's negligence, *917 he suffered injuries that would not have otherwise occurred. Maxwell v. Soileau, 561 So.2d 1378 (La.App. 2d Cir.1990). In his report, Dr. Peterson opined that the injury to plaintiffs hand occurred instantaneously, so that earlier washing of the hand would not have affected the deep areas of burn because the acid was beyond the reach of irrigation. Dr. Peterson's report did not address the care provided by Dr. Salmon and plaintiff did not present any other expert testimony regarding the issue of causation.
Unlike the situations involving obvious negligence described in Pfiffner, the present case involves more complex medical issues related to a penetrating acid burn, including the consequence of plaintiff's delay in washing his hand immediately after the accident and whether an earlier follow-up visit or referral to a specialist would have reduced the extent of plaintiffs injury. In this type of case, expert witnesses who are members of the medical profession are necessary sources to determine whether defendant possessed the requisite degree of skill or failed to exercise reasonable care and diligence. This is particularly true when, as here, the defendant physician has supported the summary judgment motion with expert opinion evidence that the treatment he provided satisfied the applicable standard of care. See Lee v. Wall, 31,468, 469 (La.App.2d Cir.1/20/99), 726 So.2d 1044; Demopulos, supra.
After reviewing the record, we note that neither the testimony of Dr. Knight nor the conclusions of Dr. Peterson contain any criticism of the care provided by Dr. Salmon. Furthermore, the plaintiff has not identified any expert witness who would provide testimony critical of Dr. Salmon's treatment to contradict the expert opinion of the medical review panel members that the standard of care was satisfied in this case. In the absence of such expert testimony, plaintiff has failed to present factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial regarding the applicable standard of care, a breach thereof and causation. Consequently, we must conclude that there is no genuine issue of material fact and that the district court erred in denying the defendants' motion for summary judgment.

CONCLUSION
For the foregoing reasons, the district court's judgment denying the motion for summary judgment is reversed. Judgment is hereby rendered in favor of the defendants, Clifton Salmon, M.D. and Claiborne Family Medical Clinic, granting the motion for summary judgment and dismissing the claims of plaintiff. Costs of this appeal are assessed to the appellee, Joe W. Vinson.
REVERSED AND RENDERED.