986 So.2d 216 (2008)
Pauline SNELLING, et al, Plaintiff-Appellee,
v.
LSU HEALTH SCIENCES CENTER-MONROE, Defendant-Appellant.
No. 43,332-CA.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*217 Breithaupt, Dunn, Dubos, Shafto & Wolleson, LLC by P. Scott Wolleson, Walter C. Dunn, Monroe, James D. "Buddy" Caldwell, Attorney General, for Appellant.
Guerriero & Guerriero by Jeffrey D. Guerriero, Monroe, Nelson & Hammons by John L. Hammons, Shreveport, for Appellee.
Before CARAWAY, PEATROSS and MOORE, JJ.
CARAWAY, J.
The plaintiff in this medical malpractice action moved for partial summary judgment regarding the issue of defendant's liability. The only evidence presented by plaintiff was the opinion and written reasons of the medical review panel ("MRP"), and defendant filed no opposition evidence. The trial court granted the partial summary judgment and certified the ruling for appeal. Although there were certain findings of the MRP favorable to plaintiff's claims, we find the MRP ruling insufficient, presenting material fact issues for trial. Accordingly, we reverse the ruling of the trial court.

Facts
This is a wrongful death and survival action arising from defendant's alleged acts of medical malpractice resulting in the death of the plaintiff's husband, Charles Snelling ("Snelling"). According to the petition, Snelling went to the emergency room of LSU Health Sciences Center-Monroe ("LSUHSC") on February 12, 2003, after suffering from melena for approximately four days. An EGD[1] and colonoscopy were scheduled for the following month. Instead of a colonoscopy, the procedure known as a flexible sigmoidoscopy was performed. A polyp was discovered *218 and removed by polypectomy. The EGD eventually occurred on April 16, 2003.
About three weeks later, Snelling underwent surgery to remove a portion of his stomach that was cancerous. After this surgery, Snelling developed a duodenal stump leak, described as a known complication of the surgery. The method used to repair the leak was found by the MRP to have breached the standard of care.
An MRP was convened and issued its Opinion and Written Reasons for Conclusion on May 22, 2006:
1.
The evidence presented does support the conclusion that the defendant, [LSUHSC], formerly known as E.A. Conway Memorial Hospital, failed to meet the applicable standard of care as charged in the complaint. See the following written reasons.
2.
The conduct complained of was a factor in the alleged resultant damages. See the reasons below.
WRITTEN REASONS FOR OPINION
Plaintiff, Pauline Snelling, filed this complaint against [LSUHSC], formerly known as E.A. Conway Memorial Hospital for alleged injuries to her husband, Charles Snelling. After reviewing the evidence presented, the panel finds there was an unnecessary delay in timely performing an EGD and also in not performing a colonoscopy. On February 12, 2003, Mr. Snelling presented with symptoms, particularly four days of melena, and was scheduled for an EGD and colonoscopy about one month after this. A CBC (complete blood cell count) was not obtained. However, at that time he only received a flexible sigmoidoscopy and polypectomy and did not ever receive a colonoscopy despite the finding of a polyp. The EGD was not done until April 16, 2003, despite the previous plan. However, Mr. Snelling's medical condition required the additional testing be performed sooner than two months after presentation. If the tests had been done in February, a diagnosis would have been made earlier. If the patient needed to be scoped more urgently, then the standard of care requires the testing to be provided and done. The delay in diagnosis deviated from the standard of care, but was not a proximate cause of his injury and death. The records indicate that if Mr. Snelling had been diagnosed with gastric cancer in February, it is most likely that he already had metastatic disease based on the bulkiness of the tumor removed in May.
A subtotal gastrectomy with antecolic gastrojejunostomy and omentectomy was performed on May 8, 2003. This procedure was appropriately performed by the fifth year president surgeon and supervised by staff surgeons intra-operatively and post-operatively. The records reflect the residents were qualified to perform the operation and that the supervising physicians were present for key parts of the operation. Subsequently the patient developed a duodenal stump leakage which is a known complication of the procedure performed. The physicians and staff recognized the patient's medical condition and need for the repair procedure. However, the panel finds the standard of care was breached by not placing the duodenostomy tube after the initial leak was discovered. The falciform ligament was an inappropriate tissue to use. One of the panel members finds a tissue patch repair should never have been attempted. If the duodenal stump leakage had been correctly handled with drainage, the patient *219 may have had a greater chance of survival. The panel finds the breach of the standard of care was a factor in the patient's injuries.
On September 24, 2007, Pauline Snelling moved for partial summary judgment on the issue of LSUHSC's liability, based on the MRP opinion. Additionally, there was an affidavit by the attorney chairman of the MRP attesting to the authenticity of the MRP opinion and the oaths and affidavits of the three doctors who participated on the MRP, identifying their opinion as MRP members. Thereafter, LSUHSC noticed the depositions of the MRP physicians, and opposed plaintiff's motion based on the inadmissibility of the MRP opinion under the Daubert-Foret[2] standard and on the grounds of prematurity, arguing inadequate time within which to conduct discovery.
The summary judgment was heard on November 6, 2007, without any opposition evidence by LSUHSC. The trial court denied defendant's motion to continue the hearing, and its request to argue its opposition to the motion. The judgment granting plaintiff's partial summary judgment was signed November 6, 2007. It was subsequently certified for appeal upon a finding that there was no just reason for delay of appeal. It is from this judgment that LSUHSC appeals.

Discussion
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880. A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Appellate courts review the trial court's grant of summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Samaha, supra; Thomas v. Willis Knighton Med. Ctr., 43,176 (La.App.2d Cir.4/30/08), 981 So.2d 807; Nugent v. On-Call Nursing Agency & Assoc. of New Orleans, Inc., 07-1022 (La.App. 5th Cir.3/25/08), 983 So.2d 128.
La. C.C.P. art. 966(C)(2) sets forth the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The plaintiff's burden of proof in an action for medical malpractice is set forth in La. R.S. 9:2794(A):
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians *220 licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and whether the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Samaha v. Rau, supra, citing Pfiffner v. Correa, 643 So.2d 1228 (La. 1994).
The opinion of the medical review panel may be considered by the court when ruling on a summary judgment motion. Hubbard v. North Monroe Med. Ctr., 42,744 (La.App.2d Cir.12/12/07), 973 So.2d 847, writ denied, 08-0101 (La.3/7/08), 977 So.2d 907. The Medical Malpractice Act[3] (the "Act") provides that "[a]ny report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness." La. R.S. 40:1299.47(H). The Supreme Court interpreted this specific provision of the Act as follows:
... [W]e find the provisions of La. R.S. 40:1299.47(H), which states that the panel opinion is not "conclusive," means only that the panel opinion, whatever conclusion is reached, does not preclude the subsequent filing of a lawsuit in a court of law. The medical review panel opinion is, however, admissible, expert medical evidence that may be used to support or oppose any subsequent medical malpractice suit. See La. R.S. 40:1299(G) and (H). As with any other expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing view point.
Samaha v. Rau, 977 So.2d at 887.
In the medical malpractice jurisprudence involving summary judgments, MRP opinions finding no malpractice have been offered by defendants in moving for summary judgment. The defendant, who does not have the burden of proof, has used the favorable MRP ruling "to point out to the court the absence of factual support" for the alleged malpractice. The opinion of the MRP is based upon a review of the medical facts and the expert opinions of the doctors. As discussed by our Supreme Court in its recent ruling in Samaha v. Rau, supra, the defendant's use of the MRP in support of summary judgment "does serve as evidence that there was expert medical testimony that [the defendant] had not failed to act within the appropriate standard of care and, thus, was *221 evidence which tended to negate the plaintiffs' claims." Id. at 888.
In contrast, regarding the plaintiff's burden of proof for malpractice, we have not been cited any case where the plaintiff has prevailed through summary judgment procedure solely on the strength of a favorable written MRP ruling.[4] For summary judgment on the issue of liability to be granted a plaintiff, the MRP opinion would be required under La. R.S. 9:2794(A) to establish (1) the standard of care applicable to the defendant; (2) that the defendant breached that standard; and (3) that there was a causal connection between the breach and the resulting injury. Samaha v. Rau, supra; Thomas v. Willis Knighton Med. Ctr., supra; Hubbard v. North Monroe Med. Ctr., supra. The abbreviated MRP ruling relied upon by plaintiff in this case, while indicating the breach of certain unspecified standards of care by LSUHSC, is inadequate in our opinion to establish by a preponderance of plaintiff's own evidence that there was a causal connection between the two alleged instances of malpractice and Snelling's resulting injury and death.
In the first place, certain critical timing facts are not included in the MRP ruling and were never provided otherwise in support of plaintiff's claim. After Snelling's stomach operation on May 8, 2003, the MRP opinion references a "tissue patch repair" procedure. However, the date of that procedure is not revealed. Furthermore, there is no allegation in the petition or evidence in support of summary judgment identifying Snelling's date and cause of death.
Secondly, while the MRP opinion identifies two separate events involving LSUHSC's breach of applicable standards of care, the opinion indicates that the hospital's action or inaction in breach of care may not have caused Snelling's injury and death. The first failure of care pertained to the initial two-month delay in the administration of an EGD or colonoscopy. However, the MRP doctors concluded that this "delay in diagnosis deviated from the standard of care, but was not a proximate cause of his injury and death."[5] The second failure of care regarding the complication of surgery, "the duodenal stump leakage," led to the conclusion that the patient "may" have lost a greater chance of survival from the mishandling of that leakage repair. Although there was no opposition evidence to this conclusion, testimony that a result "may" occur also equally suggests that it may not. When such testimony is used in support of a motion for summary judgment for the establishment of a critical fact for a plaintiff's claim, we find that a material fact issue remains as to that fact and the plaintiff's claim is not established by a preponderance of the evidence which the plaintiff presented.
Finally, the largely unexplained medical terminology employed throughout the MRP opinion falls short of the mark as scientific and specialized medical knowledge that assists this court in this summary *222 judgment context for an understanding of the medical evidence and for a determination of the existence of the essential causal connection between the malpractice breach and the resulting injury. Such assistance to the trier of fact is the purpose of expert opinion testimony under Code of Evidence Article 702, and the expert opinion is admissible in support of a motion for summary. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226. However, the many unexplained medical terms of the present MRP opinion place a large gap for a lay understanding of LSUHSC's actions or inactions which we cannot attempt to bridge by consulting medical sources outside the record.

Conclusion
Upon our finding of the existence of material fact issues concerning the determination of the defendant's liability from the MRP ruling, the partial summary judgment of the trial court is reversed. Costs of the appeal are assessed to plaintiff.
REVERSED.
NOTES
[1] EGD is an initialism for esophagogastroduodenoscopy, a diagnostic endoscopic procedure used to visualize the upper part of the gastrointestinal tract up to the duodenum.
[2] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and State v. Foret, 628 So.2d 1116 (La.1993).
[3] La. R.S. 40:1299.41, et seq.
[4] We were cited the opinion Carter v. Hebert, 05-1986 (La.App. 1st Cir.9/26/06), 943 So.2d 1191, where the plaintiff prevailed by summary judgment in the trial court. Nevertheless, the court of appeal found the panel opinion technically inadmissible in a ruling that may now be questioned after the recent ruling in Samaha v. Rau, supra. However, the panel ruling itself in Carter appeared to contain material fact issues justifying the appellate court's reversal of the plaintiff's summary judgment.
[5] The undetailed partial summary judgment was granted "as to liability" making no distinction between plaintiff's failure to diagnose claim and the duodenal stump leakage claim. The judgment, therefore, supposedly found liability for plaintiff's claim for this delay in diagnosis, despite the express finding of no causation.