PEATROSS, J.
 

 Lin this medical malpractice case, the trial court granted summary judgment in favor of Defendants, M. Pittman, M.D. and LSU Medical Center — E.A. Conway Medical Center (collectively referred to as Defendants). The trial court found that Plaintiff, John Poullard, failed to come forward with any evidence establishing the standard of care applicable to Defendants, a breach of that standard or a causal connection between the alleged breach and his injuries. Mr. Poullard then appealed the dismissal of his claims against Defendants. For the reasons stated herein, we affirm.
 

 FACTS
 

 Mr. Poullard, an inmate at David Wade Correctional Center (“DWCC”), was seen by a staff physician after complaints of hemorrhoids, blood in his stools and stomach pain. After a preliminary examination, the DWCC staff physician referred Mr. Poullard to the E.A. Conway Prison Surgery Clinic where Mr. Poullard further complained of abdominal pain, prostate pain, burning in the groin and passing blood and mucus in his bowel movements. On January 24, 2003, Mr. Poullard received a physical examination at the surgery clinic which showed normal results without abnormalities of the abdomen, groin or genitalia.
 

 An esophagogastroduodenoscopy/colo-noscopy (“EGD/colonoscopy”) was scheduled, however, in an effort to diagnose Mr. Poullard’s unexplained complaints of ab
 
 *1066
 
 dominal pain. On January 26, 2003, the EGD/colonoscopy was performed, which rendered normal results with the exception of minor gastritis. Two biopsies were taken of the stomach and submitted to the pathology lab for testing. The colonosco-py revealed no | .¿abnormalities of the colon, with the exception of a small polyp, which was biopsied and sent to the pathology lab for testing as well.
 

 Mr. Poullard’s follow-up appointment for these procedures was held at the prison surgery outpatient clinic on March 19, 2003. The pathology report revealed Heli-cobacter pylori infection of the stomach and a benign polyp of the colon. Mr. Poullard received the standard antacid/antibiotic treatment for his stomach infection which consisted of a prescription of Preva-cid, Amoxicillin and Clarithromycin for a duration of two weeks. It was ordered that Mr. Poullard have a repeat colonosco-py in one year and that he return to E.A. Conway Medical Center as needed should his symptoms persist.
 

 After completing his medication therapy of two weeks for the bacterial infection in his stomach, Mr. Poullard did not return to the medical center with complaints of stomach pain for several months. When he did begin to complain of stomach pain again eight months later, Mr. Poullard was referred by the staff physician at DWCC to the medical center where he was again treated with antibiotics and an antacid. Alter Mr. Poullard finished his antacid/antibiotic medication treatment, a repeat EGD was performed, which indicated no irregularities.
 

 Mr. Poullard continued, however, to complain of stomach pain and returned to the medical center a third time where he was prescribed another course of antacid/antibiotic treatment. Different antibiotics were used this time, however, because Mr. Poullard’s physician suspected the bacteria causing his infection had become resistant to the initial antibiotics | ^prescribed. After being treated with a final course of antacid/antibiotic medication, Mr. Poullard had three additional follow-up visits to the medical center in March, April and May 2004. After May 2004, Mr. Poullard did not return to the medical center for stomach problems or complaints relating to the bacterial infection. Mr. Poullard did, however, return to the medical center after May 2004 for several problems unrelated to his stomach infection such as chest pains, a finger injury and lipoma of the shoulder. As previously stated, Mr. Poullard then filed the instant suit for medical malpractice.
 

 Defendants filed a motion for summary judgment pursuant to La. C.C.P. art. 966, which was granted by the trial court. The trial court noted in its ruling that Mr. Poullard failed to present any competent evidence showing the standard of care applicable to his physicians, a breach of that standard of care or a causal connection between a breach and his injuries. The trial court further observed that, in addition to his failure to provide legal and factual support for his medical malpractice allegations, Mr. Poullard submitted absolutely nothing to overcome Defendants’ well pleaded motion for summary judgment.
 

 Mr. Poullard now appeals.
 

 DISCUSSION
 

 The appellate court’s review of a grant or denial of a summary judgment is
 
 de novo. Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226;
 
 Schroeder v. Board of Supervisors of Louisiana State University,
 
 591 So.2d 342 (La.1991);
 
 Hinson v. Glen 4Oak Retirement Home,
 
 34,281 (La.App.2d Cir.12/15/00), 774 So.2d 1134. The summary judgment procedure
 
 *1067
 
 is designed to secure the just, speedy and inexpensive determination of every action allowed by law. See La. C.C.P. art. 966(A)(2);
 
 Hinson v. Glen Oak Retirement Home, supra; Lee v. Wall,
 
 31,468, 31,469 (La.App.2d Cir.1/20/99), 726 So.2d 1044;
 
 Gardner v. Louisiana State University Medical Center in Shreveport,
 
 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(B).
 

 The burden of proof on a motion for summary judgment remains with the movant.
 
 Samaha v. Rau,
 
 07-1726 (La.2/26/08), 977 So.2d 880. When the mov-ant, however, will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant is not required to negate all the essential elements of the adverse party’s claim, action or defense.
 
 Id.; Hin-son v. Glen Oak Retirement Home, supra.
 
 Rather, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim.
 
 Samaha v. Rau, supra; Hinson v. Glen Oak Retirement Home, supra.
 
 Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and movant is entitled to summary judgment. See La. C.C.P. art. 966(C)(2);
 
 Samaha v. Rau, supra; Hinson v. 5Glen Oak Retirement Home, supra;
 
 Gardner v. Louisiana State University Medical Center in Shreveport, supra.
 

 The plaintiff bears the burden of proving that a doctor committed malpractice.
 
 Wiley v. Lipka,
 
 42,794 (La.App.2d Cir.2/6/08), 975 So.2d 726,
 
 writ denied,
 
 08-0541 (La.5/2/08), 979 So.2d 1284. Any medical malpractice claimant must establish, by a preponderance of the evidence: (1) the defendant’s standard of care, (2) the defendant’s breach of that standard of care, and (3) a causal connection between the breach and the claimant’s injuries. See La. R.S. 9:2794(A);
 
 Pfiffner v. Correa,
 
 94-924, 94-963, 94-992 (La.10/17/94), 643 So.2d 1228;
 
 Wiley v. Lipka, supra.
 

 The Louisiana Supreme Court has found that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim.
 
 Samaha v. Rau, supra; Pfiffner v. Correa, supra; Wiley v. Lipka, supra; Vinson v. Salmon,
 
 34,582 (La.App.2d Cir.5/9/01), 786 So.2d 913. In most cases, however, because of the complex medical and factual issues involved, a plaintiff who does not present medical expert testimony will likely fail to sustain his burden of proving his claim under the requirements of La. R.S. 9:2794.
 
 Samaha v. Rau, supra; Pfiffner v. Correa, supra; Wiley v. Lipka, supra; Vinson v. Salmon, supra.
 
 Nevertheless, expert testimony is not required where the physician does an obviously careless act from which a lay person can infer negligence, such as fracturing a leg during an examination, amputating the wrong arm, dropping a knife or scalpel on a patient or leaving a sponge in a patient’s body.
 
 Id.
 

 | fiMr. Poullard’s primary argument is that Defendants committed medical malpractice when they did not set up a short-term follow-up appointment after prescribing him an initial course of antibiotics to treat the Helicobacter pylori bacterial infection in his stomach. According to Mr. Poullard, a short-term follow-up appointment should have been scheduled to ensure that the bacteria causing the infection
 
 *1068
 
 in his stomach had not become resistant to the antibiotics. Mr. Poullard points out that Dr. Joann Alley, a witness for the defense, admitted that she understood that his infection may have become resistant to the initially prescribed antibiotics.
 

 Mr. Poullard further argues that, in her affidavit, Dr. Alley intentionally and negligently misrepresented the “real standard of care” applicable to Defendants,
 
 i.e.,
 
 the standard being to schedule a short-term follow-up appointment after prescribing an initial course of antibiotics to ensure that they were effective. Although Mr. Poul-lard never sets forth a cognizable legal standard of care which he claims to be applicable to Defendants, he contends that the true standard of care applicable to Defendants can be found by viewing the medical reports of his other physicians in his medical records.
 

 Mr. Poullard did not present any evidence during the summary judgment proceedings in the form of expert witness medical testimony to support his claims against Defendants. Citing
 
 Pfiffner v. Correa, supra,
 
 Mr. Poullard argues that he should not have been required to produce expert witness testimony in support of his arguments because Dr. Pittman’s failure |7to schedule a follow-up appointment after prescribing a two-week course of antibiotics was “an obvious careless act in which a lay person [could] infer negligence.” We disagree.
 

 Defendants correctly point out that they do not bear the burden, on summary judgment or at trial, of disproving Mr. Poul-lard’s medical malpractice claims and, further, that they are not required to produce expert witness testimony in support of their motion for summary judgment. Notwithstanding the lack of a requirement to do so, Defendants presented the affidavit opinion of Dr. Alley indicating that there was expert medical testimony as to the standard of care applicable to Defendants and that Defendants did not breach that standard of care during their treatment of Mr. Poullard. More particularly, Dr. Alley indicated that Dr. Pittman followed standard procedure by prescribing Mr. Poul-lard an antacid/antibiotic course of medication and by notifying him
 
 to return as needed
 
 with a repeat visit 'and colonoscopy scheduled in one year.
 

 In support of their position as to the applicable standard of care, Defendants reference Dr. Alley’s affidavit opinion wherein she explains that, when a patient is in an institutional setting such as a prison, where 24-hour medical treatment is available and the patient has access to a daily sick call, short-term follow-up appointments are not automatically scheduled. This is because the patient is permitted to make a sick call to the prison’s medical facility where he is incarcerated to notify personnel that he needs to return to the medical center if it appears that his condition persists due to continued symptoms. ’
 

 [^Significantly, as Dr. Alley and Defendants point out, even in the absence of scheduling a short-term follow-up appointment, Mr. Poullard continued to return to the medical center for treatment several times after he was initially treated by Dr. Pittman with a course of antacid/antibiotic medication. Each time Mr. Poullard complained of stomach pains relating to the infection after his initial treatment, he was examined and treated again by the physicians at the medical center. The third time Mr. Poullard was treated, he was prescribed different antibiotics because his physicians suspected the bacteria causing his infection had grown resistant to the initially prescribed antibiotics.
 

 Given that Mr. Poullard was told to return as needed after he was initially treated by Dr. Pittman, and since Mr. Poullard
 
 *1069
 
 did, in fact, return several times for additional treatment by Defendants, we cannot find that Defendants’ failure to schedule a short-term follow-up appointment with Mr. Poullard was a mistake “so obvious that a lay person [could] infer negligence without the guidance of expert testimony.”
 

 In summary, Mr. Poullard submitted no evidence at the summary judgment proceedings, expert or otherwise, to support his allegations of medical malpractice. Thus, Mr. Poullard failed to prove by a preponderance of the evidence which standard of care was applicable to Defendants, whether there was a deviation from such standard and whether there was a causal connection between his injuries and an alleged breach of such standard. We find that Mr. Poullard’s failure to present evidence to support his allegations of medical malpractice against Defendants resulted in the | ^absence of a genuinely contested material fact in the case
 
 sub judice.
 
 Thus, Defendants were properly entitled to summary judgment as a matter of law.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court granting Defendants’ motion for summary judgment and dismissing John Poullard’s claims of medical malpractice is affirmed. Costs of this appeal are assessed to John Poullard.
 

 AFFIRMED.