**Latidrua JACKSON on Behalf of Minor, Tazara Andre Tyler, Jr., and Alice Bullard, Plaintiffs-Appellees**

v.

**Joseph A. FARQUHAR, M.D., Willis Knighton Medical Center, and Louisiana Hospital Association Physical Trust Fund, Defendants-appellants**

**No. 50,902-CA**

Court of Appeal of Louisiana,
Second Circuit.

October 5, 2016

WALTER FLANDERS CLAWSON, Counsel for Defendants-Appellants

EDWARD DIXON, PATRICK RICHMOND JACKSON, J. KYLE MCCOTTER, Counsel for Plaintiffs-Appellees

Before WILLIAMS, DREW and LOLLEY, JJ.

LOLLEY, J.

The Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Review Board (collectively, "the Fund") appeal the trial court's judgment granting a summary judgment on the issue of liability filed by the plaintiffs, Latidrua Jackson, on behalf of the minor Tazara Andre Tyler, Jr., and Alice Bullard. For the following reasons, we affirm the trial court's judgment.

### FACTS

This medical malpractice case arises from the death of Tazara Andre Tyler, Sr., following his discharge from Willis Knighton Medical Center ("Willis Knighton"). On April 2, 2006, Tyler presented to Willis Knighton's emergency room complaining of severe chest pains and shortness of breath. Shortly thereafter, Dr. Joseph A. Farquhar arrived to examine Tyler, who informed Dr. Farquhar that the night before he was out drinking alcohol and smoking marijuana laced with cocaine.

Dr. Farquhar ordered laboratory tests and X rays for Tyler, and his drug screen came back positive for marijuana and cocaine. After examining Tyler, Dr. Farquhar concluded that his vitals were stable and consistent with cocaine intoxication. At approximately 9:15 p.m., Tyler was discharged from the emergency room. However, shortly after Tyler's discharge, Dr. Farquhar reviewed his chest X ray for the first time and determined that Tyler was suffering from a large tension pneumothorax caused by the complete collapse of his right lung.

Dr. Farquhar immediately tried to reach by telephone Tyler's mother, Alice Bullard, the only number listed on Tyler's medical chart. Dr. Farquhar was unable to reach anyone after multiple attempts. He began to call area hospitals, attempting to determine whether Tyler had sought treatment at another emergency room. At ap-

proximately 11:15 p.m., Melissa Stewart, Tyler's girlfriend, called Willis Knighton's emergency room to inform medical personnel that Tyler's condition had deteriorated significantly. Stewart was instructed to immediately rush Tyler to the nearest emergency room.

Stewart did not call emergency medical services ("EMS") until 12:50 a.m. Upon arriving at Stewart's apartment, EMS found Tyler unresponsive and commenced resuscitation attempts. Tyler was transported to the V.A. Medical Center's emergency room, which was located across the street from Stewart's apartment. At some point, Dr. Farquhar was able to reach a V.A. physician by phone, and he was informed that Tyler was at the V.A. emergency room and coding. Dr. Farquhar advised the physician of Tyler's chest X ray results; however, the resuscitation attempts on Tyler failed, and he died at 1:51 a.m., April 3, 2006.

On April 2, 2007, Bullard filed a medical malpractice complaint against Dr. Farquhar and Willis Knighton with the Fund, as required for medical malpractice cases pursuant to the Louisiana Medical Malpractice Act. According to Bullard, Dr. Farquhar and employees of Willis Knighton committed medical malpractice by failing to review all of Tyler's lab results, including X rays, which would have revealed that he was suffering from a large tension pneumothorax caused by the complete collapse of his right lung.

A medical review panel ("MRP") convened on March 10, 2010. After reviewing the evidence submitted in the matter, the MRP determined that the evidence did not support the conclusion that Willis Knighton failed to meet the applicable standard of care as charged in the complaint. However, the MRP unanimously found that the evidence supported the conclusion that Dr. Farquhar failed to comply with the appro-

priate standard of care required for Tyler, causing his death.

On June 4, 2010, the plaintiffs filed a petition for damages in the trial court against Dr. Farquhar, Willis Knighton, and the Louisiana Hospital Association Physician Trust Fund ("LHAPTF"). Thereafter, the trial court granted Willis Knighton's motion for partial summary judgment and dismissed the plaintiffs' claims against Willis Knighton with prejudice.

The plaintiffs filed a motion for partial summary judgment against Dr. Farquhar on the issue of liability. However, before the trial court ruled on the motion, the plaintiffs and Dr. Farquhar reached a settlement agreement in the amount of $95,000.00. A formal order was signed dismissing all claims against Dr. Farquhar and LHAPTF with prejudice, and reserving the plaintiffs the right to pursue excess damages against the Fund. As a result, Dr. Farquhar was retained as a nominal defendant.

Subsequently, the plaintiffs filed a motion for partial summary judgment against the Fund on the issue of Dr. Farquahar's liability. In support of their motion, the plaintiffs included the MRP's opinion, written reasons for conclusion, and accompanying affidavits by Drs. James W. Cotter and Thomas Arnold, both members of the MRP.

The Fund filed an opposition to the plaintiffs' motion claiming there were at least three genuine issues of material fact in the case, those being: (1) whether Dr. Farquhar failed to meet the requisite standard of medical care; (2) whether the actions or inactions of Dr. Farquhar caused Tyler's death; and, (3) whether Dr. Farquhar discharged Tyler from the emergency room on April 2, 2006. In support of their opposition, the Fund included the affidavit of its expert, Dr. Mark A. Cimino. According to Dr. Cimino, Melissa Stewart's deci-

sion to wait one hour and 40 minutes to call EMS was the cause of Tyler's death, because EMS could have intervened and possibly saved his life.

After a hearing on the matter, the trial court granted the plaintiffs' motion as to Dr. Farquhar's liability, but denied summary judgment on the issue of damages. The trial court stated:

> [Dr. Cimino's affidavit] does not set forth the appropriate standard of care owed by Farquhar and only concludes that Mr. Tyler's death was due to the inactions of his girlfriend without addressing the panel's finding of a breach due to failing to review the ordered x-ray prior to discharge and to address the markedly abnormal vital signs.

After the entry of a written judgment, the Fund appealed.

### DISCUSSION

#### Motion for Summary Judgment

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 2007–1726 (La. 2/26/08), 977 So.2d 880; *Snelling v. LSU Health Sciences Ctr.*, 43,332 (La.App. 2 Cir. 6/4/08), 986 So.2d 216, 219, *writ denied*, 2008–1322 (La. 10/3/08), 992 So.2d 1013. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969. The procedure is favored and shall be construed to accomplish those ends. La. C.C.P. art. 966(A)(2).

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter before the court, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2) (at the time of these proceedings); *Robert v. Turner Specialty Servs., L.L.C.*, 50,245 (La.App. 2 Cir. 11/18/15), 182 So.3d 1069, 1073.

Appellate courts review the trial court's grant of summary judgment *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau, supra*; *Penton v. Castellano*, 48,433 (La.App. 2 Cir. 10/23/13), 127 So.3d 944, 947, *writs denied*, 2013–2687 (La. 2/7/14), 131 So.3d 867 and 2013–2725 (La. 02/07/14), 131 So.3d 869.

■ In a medical malpractice case, summary judgment is an appropriate vehicle both as to findings of liability and damages. *See Bijou v. Alton Ochsner Med. Found.*, 95–3074 (La. 9/5/96), 679 So.2d 893; *Foster v. Patwardhan*, 48,575 (La. App. 2d Cir. 01/22/14), 132 So. 3d 495, *writ denied*, 2014–0614 (La. 04/25/14), 138 So. 3d 1233.

■ To establish a claim for medical malpractice, a plaintiff must prove, by a preponderance of the evidence: (1) the standard of care applicable to the defendant; (2) the defendant breached that standard of care; and, (3) there was a causal connection between the breach and the resulting injury. La. R.S. 9:2794. The plaintiff need not show that the doctor's conduct was the only cause of harm, nor need she negate all other possibilities. A medical malpractice plaintiff must show that as a result of the defendant's negligence, he suffered injuries that would not have otherwise occurred. *See Vinson v. Salmon*, 34,582 (La.App. 2d Cir. 05/9/01), 786 So. 2d 913, 916–17.

■ Here, the Fund offers several reasons why it believes the trial court's grant of summary judgment was in error—mostly related to the plaintiffs' burden of proof required under La. R.S. 9:2794. The Fund argues that the evidence submitted by the plaintiffs to support their motion for summary judgment (the MRP's opinion, the MRP's written reasons for conclusions, and accompanying affidavits) was devoid of underlying facts and lacked specific references or citations to Tyler's medical records to support a motion for summary judgment. Particularly, the Fund asserts that the plaintiffs failed to prove causation and that Dr. Farquhar's conduct was a substantial factor in Tyler's death. We disagree.

In support of their motion for summary judgment, the plaintiffs produced the written reasons for conclusion signed by the three members of the MRP: Thomas Arnold, M.D., Ronald S. Lambert, M.D., and James W. Cotter, III, M.D. Those reasons stated, in pertinent part:

2.

As to Joseph Farquhar, M.D., Dr. Farquhar violated the standard of care by failing to diagnose a potentially life-threatening condition. He violated the standard of care by failing to review the ordered x-ray prior to discharge of the patient from the hospital. He failed to address markedly abnormal vital signs. Reviewing the chest x-ray would have been critical in making the necessary diagnosis.

3.

The substandard conduct was a factor of the alleged damages which resulted in the patient's death.

Additionally, the plaintiffs provided affidavits of Dr. Arnold and Dr. Cotter, who both attested that during the process of the MRP, they reviewed the medical records of Willis Knighton and the plaintiffs' legal filings. They also averred that Dr. Farquhar's actions deviated from the applicable standard of care.

■ On this motion for summary judgment, our inquiry is whether the MRP's conclusion is sufficient evidence to prove malpractice. Here, the trial court determined that the panel's findings were sufficient to meet the plaintiff's burden of proof and the Fund's expert failed to show otherwise. Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. *Samaha v. Rau, supra*; *Schultz v. Guoth*, 2010–0343 (La. 01/19/11), 57 So. 3d 1002, 1006–07. The findings of the medical review panel may be considered in evaluating a summary judgment, but are not conclusive. La. R.S. 40:1231.8(H); *Hinson v. Glen Oak Ret. Home*, 34,281 (La.App. 2d Cir. 12/15/00), 774 So. 2d 1134, 1137. Thus, the findings of the medical review panel are subject to review and contestation by an opposing viewpoint. *Samaha v. Rau, supra*.

■ In order to prevail on summary judgment, the plaintiffs were required to

meet the burden of proof articulated in La. R.S. 9:2794. First, did the plaintiffs' expert opinion, expressed in the MRP's written conclusion, establish the standard of care? The standard of care required of a medical professional, that a malpractice plaintiff must prove a breach of, is the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians licensed to practice in Louisiana and actively practicing in a similar community or locale and under similar circumstances. La. R.S. 9:2794(A). A physician is not held to the standard of perfection or evaluated with the benefit of hindsight. *Langford v. Schumpert Med. Ctr.*, 33,311 (La.App. 2d Cir. 05/10/00), 759 So. 2d 1037, 1040. A physician is not required to exercise the highest degree of care possible. Rather, the physician's duty is to exercise the degree of skill ordinarily employed by her professional peers under similar circumstances. *Marks v. Jones*, 29,881 (La.App. 2d Cir. 12/10/97), 705 So. 2d 262. Here, all three of the panel members agreed that "[r]eviewing the chest x-ray would have been critical in making the necessary diagnosis." Even to the layperson, reading an X ray to make a diagnosis is a very minimal standard of care to a hold a physician to. Otherwise, why even order the X ray be taken? The panel physicians agreed that reading Tyler's X ray was "critical"; thus the standard of care was established by the MRP.

Second, did the MRP's opinion determine whether Dr. Farquhar breached that standard of care? According to the panel, "Dr. Farquhar violated the standard of care by failing to diagnose a potentially life-threatening condition. He violated the standard of care by failing to review the ordered X ray prior to discharge of the patient from the hospital. He failed to address markedly abnormal vital signs." The panel opined that Dr. Farquhar needed to review Tyler's X ray in order to make a diagnosis, and further noted that Dr. Farquhar failed to review the very X ray he ordered. The determination whether Dr. Farquhar read the X ray to make Tyler's diagnosis is a "yes" or "no" question. There is no conflicting evidence over the viewing of the X ray by Dr. Farquhar. Thus, the panel's conclusion most certainly establishes that the standard of care was breached.

Finally, the plaintiffs proved a causal connection between the breach and the injury, although the Fund argues that proximate cause was not established by the MRP's conclusions. Here, based on its determination of the standard of care and the breach of that standard by Dr. Farquhar, the panel concluded, "[t]he substandard conduct was a factor of the alleged damages which resulted in [Tyler's] death." The Fund maintains that this statement is conclusory and insufficient to carry the plaintiffs' burden of proof as to causation. However, in this case, the brevity of the MRP's conclusion is insignificant, because failure to attend to a patient when the circumstances demonstrate the serious consequences of this failure may be considered obvious negligence. *Pfiffner v. Correa*, 1994–0924 (La. 10/17/94), 643 So. 2d 1228, 1234. Tyler presented to the ER with shortness of breath and pain in his chest, and it is undisputed that Dr. Farquhar failed to review Tyler's chest X ray, which showed he had a collapsed lung, prior to his being discharged. Upon reviewing Tyler's X ray, Dr. Farquhar realized the seriousness of his mistake and made attempts to contact Tyler, but with no success. The V.A. progress notes relied upon by the MRP state that: "WK ER Doc told [V.A. physician] patient was seen in their ER around 9 P.M. with chest pain and [shortness of breath] . . . and was discharged home but apparently his [chest X ray] had right pneumothorax **which was not picked up earlier**[.] " (emphasis added). Dr. Farquhar committed an obviously

careless act in failing to review Tyler's X ray before letting him leave the emergency room. Without reading his X ray, Dr. Farquhar could not properly diagnose Tyler, and his medical condition continued, causing his death. The MRP's opinion concludes that his omission caused Tyler's injury, and considering the obvious negligence in Dr. Farquhar's actions, we agree with the trial court that the plaintiffs met the requisite burden of proof as to causation.

Responding, the Fund argues that Dr. Cimino's affidavit contested the findings of the MRP and created genuine issues of material fact as to whether the plaintiffs established their burden of proof, particularly as to causation. According to the Fund, Dr. Cimino's assertion that Stewart's delay in calling EMS to have Tyler transported to the emergency room caused his death is a significant factor not addressed by the MRP. The Fund further alleges that the trial court's decision to grant summary judgment as to liability prevents it from arguing that Stewart's negligence was an intervening factor in Tyler's death. These statements by Dr. Cimino do not refute the assertions of the panel physicians as to the standard of care and Dr. Farquhar's breach of that standard—which occurred prior to the action Dr. Cimino opines caused Tyler's death. Considering the timeline of events leading up to Tyler's death, Dr. Farquhar had already breached the standard of care to Tyler, causing his death. Thus, Dr. Cimino's affidavit did not refute the evidence that Dr. Farquhar's conduct caused Tyler's injury, which would not have occurred but for Dr. Farquhar's malpractice.

Finally, the Fund claims Dr. Farquhar's answer to the request for admissions was not included as an exhibit to the plaintiffs' motion for summary judgment as required by La. C.C.P. art. 966B(3), but was inappropriately attached to the plaintiffs' reply memorandum. As a result, the Fund asserts there is still a genuine issue of material fact as to whether Dr. Farquhar discharged the decedent from the emergency room.

We agree with the plaintiffs that there is no genuine issue of material fact as to whether Dr. Farquhar discharged the decedent. According to the plaintiffs, Dr. Farquhar admitted to discharging the decedent prior to reviewing his chest X ray in his December 1, 2011, response to their request for admissions. This admission was included as an exhibit to their reply memorandum filed prior to the hearing on the motion for summary judgment and was part of the record. Whereas La. C.C.P. art. 966 was amended effective January 1, 2016, prohibiting the filing of additional documents with a reply memorandum, the version of art. 966 in effect at the time of the proceedings contained no such prohibition. The summary judgment proceedings at issue were completed before the amended version went into effect, and the admission by Dr. Farquhar admitting to discharging Tyler was properly considered by the trial court.

*No Right of Action*

On appeal, the Fund alleges for the first time that Bullard, as Tyler's mother, does not have a right of action or cause of action to proceed against them. According to the Fund, Tyler's son is the sole surviving heir and Bullard's claims against them should be dismissed. We agree.

An action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. In cases where the law grants a remedy to certain persons for the particular harm alleged by the plaintiff, the exception of no right of action raises the issue of whether the plaintiff belongs to that particular class to which the law grants the remedy. *Ba-*

*deaux v. Southwest Computer Bureau, Inc.*, 2005–0612 (La. 03/17/06), 929 So. 2d 1211, 1217; *Jackson v. Estate of Jones*, 39,056 (La.App. 2d Cir. 10/27/04), 887 So. 2d 618, 621, *writ denied*, 2004–2907 (La. 02/04/05), 893 So. 2d 874. The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163.

■■■■■ The burden of proof of establishing the exception of no right of action is on the exceptor. *City of New Orleans v. Board of Directors of La. State Museum*, 1998–1170 (La. 03/02/99), 739 So. 2d 748. The exception of no right of action is directed to showing that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927; *Schexnayder v. Gish*, 41,819 (La.App. 2d Cir. 02/07/07), 948 So. 2d 1259, 1263.

If a person dies due to the fault of another, a suit may be brought by a statutorily mandated class of beneficiaries to recover damages for the victim's damages and their own individual injury arising out of the victim's death pursuant with La. C.C. arts. 2315.1 and 2315.2. The classes of beneficiaries relevant to this matter are listed in both articles as follows: (1) the surviving spouse and child or children of the deceased, or either the ⌊13spouse or the child or children; and, (2) the surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

■■■■ The primary category of beneficiaries under both articles includes "children" of the deceased tort victim. If a tort victim is survived by a spouse or a child, the parents of the tort victim have no right to recover for the damages sustained by the victim or for their own damages for the victim's wrongful death. *Jenkins v.*

*Mangano Corp.*, 2000–0790 (La. 11/28/00), 774 So. 2d 101. Thus, the issue to be resolved in this case is whether the Fund proved that Tyler was survived by a spouse and/or a child whose existence would preclude Bullard from making a claim.

In support of its exception, the Fund urged that Bullard, Tyler's mother, did not have a right of action because Tyler left a child as evidenced by the certificate of birth. Included with the plaintiffs' motion for summary judgment is the birth certificate of Tazara Andre Tyler, Jr., son of Tazara Andre Tyler, Sr. and Latidrua Jackson, born April 22, 2002. Tyler died in 2006, so, at his death, he had a child. Therefore, since the record indicates that Tyler was survived by a son, Tazara Andre Tyler, Jr., Bullard is precluded from pursuing damages based on her son's death and has no right of action against the Fund pursuant to La. C.C. arts. 2315.1 and 2315.2.

CONCLUSION

For the foregoing reasons, the peremptory exception of no right of action by The Louisiana Patient's Compensation Fund and the Louisiana Patient's Compensation Fund Oversight Review Board is sustained. All claims by Alice Bullard are dismissed. Additionally, the judgment granting ⌊14the motion for summary judgment by remaining plaintiff, Latidrua Jackson, on behalf of Tazara Andre Tyler, Jr., is affirmed. Costs of the appeal are assessed to the Fund.

**EXCEPTION OF NO RIGHT OF ACTION SUSTAINED, AND APPEAL BY ALICE BULLARD IS DISMISSED; JUDGMENT AFFIRMED IN ALL OTHER RESPECTS.**